## DICKERSON v. STATE.

### Opinion delivered October 7, 1912.

1. CONSPIRACY—SUFFICIENCY OF EVIDENCE TO PROVE.—In order to establish a conspiracy, it is not necessary to prove the unlawful combination between the parties by direct evidence, but it may be shown by circumstances. (Page 75.)

2. EVIDENCE—ACTS AND DECLARATIONS OF ACCUSED.—Acts and declarations of the accused, in the nature of voluntary admissions, though done and made after the crime is alleged to have been committed, are admissible against him. (Page 76.)

Appeal from Greene Circuit Court; *Frank Smith*, Judge; affirmed.

*M. P. Huddleston,* for appellant.

1.   Instruction No. 11 should not have been given, as there was no proof of a conspiracy. 74 Ark. 554. When the conspiracy is established, the act of one is the act of all in furtherance of the common object. Wharton on Cr. Ev. §698; 59 Ark. 430. But the conspiracy must first be established *prima facie* and exclude every reasonable hypothesis except that of guilt. 97 Am. St. 776.

2.   When a witness is cross examined on a matter collateral to the issues of the case, his answers can not be contradicted by the party putting the question. The witness can only be impeached by evidence that his general reputation for truth or morality renders him unworthy of belief or that he has made different statements in his testimony in chief, or relative to some matter not collateral to the issue. ·147 S. W. 491; 58 Ark. 129; 76 *Id.* 302; 90 *Id.* 206.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1.   Direct or affirmative testimony of a conspiracy is not required. It is sufficient if the circumstances justify an inference that there was concerted action. 77 Ark. 444; 2 Wharton,· Cr. Law (10 ed.) § 1398; 4 Elliott on Ev. § 2936; Underhill on Cr. Ev. § 491; 20 Ark. 220; 32 *Id.* 220; 59 *Id.* 430.

It is for the trial judge to say whether a *prima facie* case is made, when it becomes a question for the jury to pass upon. 87 Ark. 94; 81 *Id.* 173.

2.   Instructions 3 and 4 for defendant were properly refused. Defendant was convicted of aggravated assault which is a lesser degree of the offense charged. 73 Ark. 280.

3.   The testimony of Clark was on a collateral matter and immaterial to the issue, and the rule does not apply.

FRAUENTHAL, J.   The defendant, Joe Dickerson, Ben Bowlin and Lee Edwards were jointly indicted for the crime of assault with intent to kill. Their trials were severed, and defendant was convicted of aggravated assault, and his punishment fixed at a fine of $200 and imprisonment in jail for a period of six months. He seeks a reversal of the judgment upon the ground that there was not sufficient evidence to warrant the conviction, and because the court erred in its

rulings on instructions and in admitting certain testimony.

The party alleged to have been assaulted was J. B. Green, who was in the employ as foreman of the grinding department of a corporation engaged in the manufacture of handles. Defendant was also working for this company, but the factory had shut down for repairs on the day of the alleged assault. The party in the indictment named Lee Edwards had formerly been in the employ of said company, but had been discharged. On the day of the alleged assault the defendant, Edwards and Bowlin went to the factory, and the testimony tended to prove that the defendant and Edwards had been drinking intoxicating liquor, and were to some extent under its influence. Green was at the factory engaged in some of his duties, when he heard some one coming into the room, and, looking up, saw Edwards and defendant, closely following, coming towards him very fast. He spoke in a friendly way to Edwards, who did not answer, but at once struck at him with his fist. He dodged the blow, and in doing so staggered against the defendant, who at once took hold of him around the arms. Edwards cried out to the defendant to "hold him while I kill him," and at once struck Green over the head with a handle. Green cried out to the defendant to turn him loose, and asked him what he had done to him. The defendant, however, did not turn him loose, but continued to hold him, while Edwards was striking him with the handle. At length Green caught the handle and wrenched it from Edwards, and struck the defendant, at the same time forcing himself loose. About the same time a third person (probably Bowlin) struck Green on the head, and he either staggered or fell to the floor, when the defendant got on top of him and beat him over the head with a handle, crying out that Green had done him dirty, and that he was going to beat the life out of him. In the meanwhile, the company's superintendent and other parties came to Green's assistance and succeeded in forcing the defendant and his companions to desist from their further assault of him. As a result of the assault, Green's head was cut and bruised, and he lost consciousness for a time, and was confined to his bed for ten days or two weeks. There is some conflict in the testimony, but the jury were warranted in finding, we think, that, because he had been discharged, Edwards went to the

factory to assault Green, and that defendant accompanied him to aid and abet him. · From the facts and circumstances, we are of the opinion that the jury were justified in inferring that the defendant had combined with Edwards to make the assault, and in pursuance thereof defendant did actually aid and abet Edwards in the assault and battery by first holding Green while Edwards struck him with a handle, and thereafter did actually beat Green himself with a handle while crying out that he would beat him to death.

Amongst others, the court gave the following instruction to the jury: "The theory and contention of the State is that the defendant and Lee Edwards and Ben Bowlin, with a common and unlawful purpose, sought out the said J. B. Green and assaulted him. If you find the facts so to be, and· that during the progress of the assault they were all present participating in it, and aided and abetted each other, or that, being present, they were ready and consenting to assist, aid, advise, or encourage the assault, then all persons so participating are guilty of the same offense, whatever you may find that to be, and in that event, if you find the facts so to be, then each is responsible for the other's acts, and it will not be necessary for you to consider and determine the part each of the assailants respectively took in the assault."

It is urged that this instruction was erroneous for the reason that there was no proof made that there was a conspiracy formed between said three parties. It is not necessary, however, in order to establish a conspiracy, to prove the unlawful combination between the parties by direct evidence. This may be shown by circumstances. In the case of *Chapline* v. *State*, 77 Ark. 444, it was held that a conspiracy might be inferred, although no actual meeting among the parties is proved, if it be shown by testimony that the persons pursued by their acts the same unlawful object, each doing a part, so that their acts that were apparently .independent were in fact connected. *Parker* v. *State*, 98 Ark. 575.

We are of the opinion that the facts and circumstances in this case were sufficient to show that there was a combination formed by the above-named parties to make the assault upon said Green. The instruction, therefore, given by the court

was warranted by the testimony, and is a correct statement of the law.

The defendant appeared as a witness in his own behalf, and in answer to questions asked him on his cross examination stated that he had left the mill crying out and threatening to fight, in a crazy manner, and "kind of came to himself" when an officer named Clark took hold of him and shook him. Sub-sequently, said Clark was called as a witness by the State, and testified that he did not take hold of or shake the defendant, but that defendant cried out that the union men were going to take the town, and when the witness asked him what he meant by his conduct he replied that he would go with him anywhere, as he was his friend, and that he would learn later what he meant. It is urged that the court erred in admitting the testimony of the witness Clark on the ground that it was introduced by the State in rebuttal to contradict the statement made by the defendant on his cross examination relative to a matter entirely collateral to the issue involved in the case.

The only particular in which the witness Clark contra-dicted the defendant was in stating that he did not take hold of or shake the defendant. This, we think, was a matter en-tirely immaterial to the issue involved in the case, rather than relating to an issue collateral thereto. If it can be considered as material in connection with the other testimony given by this witness, then it tended to prove the state of mind of the defendant, and was therefore competent to show the intent of the defendant in making the assault on Green, if in fact he struck Green with the handle, and this battery was made not in self-defense but unlawfully. The state of mind of the de-fendant and the intent entertained by him when the assault was made was a matter directly involved in the charge brought against him. It was therefore not collateral. The defendant's statements and conduct, testified to by Clark, were in the nature of voluntary admissions made by the defendant, and in a criminal case it is admissible for the State to prove such voluntary admissions, although made at a different time, and not competent for the defendant to prove them. *Butler* v. *State,* 34 Ark. 480.

Upon an examination of the entire record in this case, we are of the opinion that there is sufficient evidence to warrant

the verdict which was returned by the jury, and that no error was committed calling for a reversal of the judgment.

The judgment is therefore affirmed.