## GUERIN v. STATE.

### Opinion delivered October 24, 1921.

1.  INTOXICATING LIQUORS—MANUFACTURE.—Evidence held to sustain a conviction of manufacturing or being interested in the manufacture of intoxicating liquors.

2.  INTOXICATING LIQUORS—INSTRUCTION AS TO BEING INTERESTED IN MANUFACTURE.— An objection to an instruction as inaptly defining what it would take to constitute an interest in the manufacture of intoxicating liquors should be specific.

3.  CRIMINAL LAW—PROOF OF VENUE.—Proof of the venue of a crime alleged to have been committed within seven miles east of Hot Springs, the county seat of Garland County, was sufficient, as the court knows judicially that the east boundary of that county is more than seven miles from Hot Springs.

4.  CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—It was not error to refuse a new trial for newly discovered evidence that was either incompetent as being hearsay, or was cumulative.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*Geo. P. Whittington,* for appellant.

The evidence was not sufficient to warrant the submission of the question of guilt or innocence to the jury. 57 Ark. 461.

The venue of the crime was not proved. 54 Ark. 371.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

The proof was amply sufficient to sustain the verdict. 135 Ark. 117; 136 Ark. 385.

Instruction No. 6 was correct, it was based on section 6160, C. & M. Digest.

The evidence was sufficient to prove the venue. 62 Ark. 497; 68 Ark. 336; 73 Ark. 484.

The motion for new trial on account of newly discovered evidence was properly overruled; sufficient diligence not being shown. 85 Ark. 33; 103 Ark. 589; 133 Ark. 169; 78 Ark. 324; 130 Ark. 365.

HUMPHREYS, J. Appellant was indicted, tried and convicted in the Garland Circuit Court for the crime of manufacturing and being interested in the manufacture of intoxicating liquors, and as a punishment therefor was adjudged to serve a term of one year in the State penitentiary. An appeal from the judgment has been duly prosecuted to this court, and a reversal is sought upon the grounds:

First: That the evidence is insufficient to support the verdict;

Second: That instruction No. 6 given by the court was erroneous;

Third: That the venue was not established; and,

Fourth: That a new trial should have been granted upon newly discovered evidence.

(1). Appellant owned a farm known as the Guerin place, not over seven miles east of Hot Springs, and perhaps nearer. He also owned a place on the Pleasant Valley road, known as the Nichols place, back of the Essex Park.

Appellant and his wife separated and he went to Atlantic City to visit his sister. He returned to Hot Springs in October, 1920, and while there conveyed the farm on Pleasant Valley road to his wife. He testified that he also gave her the Guerin place, east of Hot Springs, but made no deed to her. Mrs. Guerin and her children resided a part of the time on the mountain place and a part of the time on the Guerin place, and when there had a young man and a Miss Baldwin living with her. These young people subsequently married and remained most of the time on the Guerin place. Appellant and his father resided on the Nichols place. While at or near Hot Springs, appellant made occasional visits

to the Guerin place to see his family. He made another trip to Atlantic City, returning about December 21st. From that time until his arrest, in January, 1921, he visited his family about once a week, going late in the afternoon and returning about 9 o'clock p. m. on these occasions. He contributed towards the support of his family during the time. Near about Christmas Roy Stegall, Federal prohibition enforcement officer, searched the Guerin place, found a small amount of red whiskey, but no still, on the farm. Appellant was there at the time. On Sunday towards the latter part of January the sheriff and his deputies, with Stegall, made a search of the Guerin house and farm and found a still in a hollow or ravine 150 yards from, and in sight of, the house. They found ten or fifteen gallons of whiskey and a dozen barrels of mash at the still; also several hundred pounds of sugar, kegs, etc., in the barn, about one hundred yards from the still. Mrs. Guerin and family left the house soon after the arrival of the officers, presumably in company with Will Smith.

Mrs. Harris, who lived across the creek from the Guerin place, testified that two or three weeks before the seizure and confiscation of the still twelve of her pigs had died from drinking the slop and eating the mash at the still; that she sent appellant word by Will Smith that the pigs had died from the effect of drinking the slop and eating the mash, and demanded pay for them; that after insistence on her part appellant paid her $8 for them and promised to put a fence around the still.

On the night of January 22nd appellant and a companion by the name of Wilcox were arrested in Hot Springs, and a bottle of whiskey and two hundred pounds of sugar were found in appellant's car.

Appellant testified that when he made the second trip to Atlantic City Will Smith applied to him to rent the Guerin place; that he told him to see his wife, and supposed that she had rented it to him. He denied any

knowledge of or connection with the still or the manu-
facturing of liquor. He admitted making frequent visits
to see his family, and that he was in the barn at times,
but denied seeing any kegs or sugar in the barn. He
testified that he paid Mrs. Harris for the pigs to keep
down any trouble, and told Will Smith that if whiskey
was being manufactured on the place he wanted him
to quit, that he didn't care to get into trouble. He fur-
ther testified that the whiskey and sugar found in his
automobile on the night of his arrest belonged to Wilcox;
that he had loaned the automobile to Wilcox several
hours before. his arrest.

We think there is substantial evidence in this record
tending to show that appellant was manufacturing or in-
terested in the manufacture of intoxicating liquors on the
Guerin farm.

(2) Instruction No. 6, of which appellant com-
plains, is as follows·

"There .s an additional instruction that I over-
looked instructing the jury; that part of the indictment
that charges him with being interested in the manufac-
ture and making or being interested in it, if he was in-
terested in it, that is if it was on his property and he
knew it or got some profit out of it he would be guilty
under the indictment, regardless of whether he was pres-
ent at the time of its being made; but, on the other hand,
if the place was in charge of his wife and he had nothing
to do with it and had no interest in the manufacture of
whiskey, then he would not be guilty."

This instruction was given orally, and inaptly ex-
plained "an interest in the manufacture of whiskey."
But when read as a whole it is quite clear that the court
meant to tell the jury that before appellant could be
convicted the evidence must show that he was interested
in the manufacture of whiskey. The latter part of the
instruction makes it clear, because the jury are distinctly

told that "if the place was in charge of his wife, and he had nothing to do with it, and had no interest in the manufacture of whiskey, then he would not be guilty.'

The inapt expression defining what it would take to constitute an interest in the manufacture of intoxicating liquor is the character of error that should have been taken advantage of by a specific objection. If the court's attention had been called to the fact that the meaning of the instruction was beclouded by the language used, it is quite apparent the court would have corrected the language so as to clearly express the intended meaning. Prejudicial error was not committed in giving the instruction.

(3). The venue was sufficiently established by the evidence. The farm was located by the witnesses as from four and a half to seven miles east of Hot Springs. The jury were warranted therefore in finding that the farm upon which the still was located was within seven miles of Hot Springs, and the court will take judicial knowledge that the east line of Garland county is more than seven miles from Hot Springs. *Forehand* v. *State*, 53 Ark. 46.

(4). Newly discovered evidence was made the ground of appellant's motion for a new trial, and the evidence, in substance, was that appellant was seldom seen upon the Guerin farm from October, 1920, until the time of his arrest in January; that the still was set on the farm in October, 1920, during the absence of appellant in the east; that Will Smith had stated to the witnesses named in the motion that the still belonged to him, and that appellant was not interested in it or in the manufacture of intoxicating liquors.

We cannot agree with learned counsel that it clearly appears that the trial court abused its discretion in refusing to grant a new trial on account of newly discovered evidence. The facts set out in the motion for a new trial consist largely in hearsay evidence of Will Smith.

This evidence was inadmissible had a new trial been granted. The other facts set out in the motion are largely cumulative.

No error appearing, the judgment is affirmed.