## WELLS *v.* STATE.

### Opinion delivered December 24, 1921.

1. CRIMINAL LAW—JUDICIAL NOTICE OF GEOGRAPHY.—The courts will take judicial knowledge of the county seats and of their location with reference to the boundary lines of their counties.

2. CRIMINAL LAW—INSTRUCTION NOT OBJECTED TO.—An instruction not objected to below will not be considered on appeal.

3. CRIMINAL LAW—HARMLESS ERROR.—The error of admitting improper testimony was not prejudicial where the court subsequently instructed the jury not to consider it.

4. HOMICIDE—INDICTMENT.—Where, according to undisputed testimony, deceased was killed with a blunt instrument, an allegation in the indictment that the exact nature of such instrument was unknown to the grand jurors, if untrue, was immaterial and could be treated as surplusage.

5. CRIMINAL LAW—ORDER OF INTRODUCTION OF TESTIMONY.—It rests within the sound discretion of the trial courts to permit testimony to be adduced out of time, and the exercise of that discretion will not be disturbed unless an abuse is shown.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed.

*J. G. Williamson, H. L. Veazy, S. A. Jones* and *Lewis Rhoton,* for appellant.

The venue was not proved. There was no proof that the alleged crime was committed in Drew County, or even the State of Arkansas. The only proof on this point was that the crime was committed 8 or 9 miles from Monticello.

Instruction No. 11 eliminated the plea of self-defense and was erroneous. No instruction was given which cured this error.

The court erred in failing to exclude the evidence of witnesses Burks and Lawson at the time motion was made by appellant to do so, instead of waiting until other witnesses had testified.

The allegation in the indictment as to the instrument with which deceased was killed being a "blunt instrument" was material and should have been proved. 13 Ark. 712; 16 Ark. 499.

The admission of the testimony of Henry Carter, after both sides had closed, was error.

No instruction was given the jury that they could fix the punishment of appellant at life imprisonment.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants.

It is not necessary to prove the venue beyound a reasonable doubt. It is sufficient if proof is made by a preponderance of the testimony. 62 Ark. 497. Proof thereof may be made by circumstantial evidence. 68 Ark. 336; 73 Ark. 484; *Guerin* v. *State,* 150 Ark. 295. The court would take judicial knowledge that a point 9 or 10 miles northeast of Monticello was in Drew county. 75 Ark. 142.

Objection to instruction No. 11 is made for the first time on appeal. The objection comes too late. 70 Ark. 348; 74 Ark. 557; 124 Ark. 599; *Cegars* v. *State,* 150 Ark. 648.

It must be assumed that an intelligent jury would heed the admonition of the court to disregard incompetent

testimony, and the excluded evidence of witnesses Burks and Lawson worked no prejudice to appellant. 100 Ark. 437.

A confession by the accused that it might be used against him, without so telling him, does not render it incompetent unless invalidated by statute. 114 Ark. 472; 107 Ark. 568.

The proof made that the instrument used by appellant was a stick, club or iron rod, was sufficient to meet the allegation in the indictment. The language referring to the description of the instrument being unknown to the grand jury was superfluous and unnecessary. Surplusages will be disregarded. 19 Ark. 578; 48 Ark. 45; 49 Ark. 499; 55 Ark. 365; 60 Ark. 521.

It is within the court's discretion to permit testimony to be adduced by the State after defendant has rested his case. 100 Ark. 180; 32 Ark. 585; 129 Ark. 180.

Appellant did not request an instruction permitting the punishment to be assessed at life imprisonment, and cannot complain of the failure of the court to give such instruction. 47 Ark. 196; 75 Ark. 373; 67 Ark. 416; 125 Ark. 324.

WOOD, J. The appellant was convicted in the Drew Circuit Court of murder in the first degree and sentenced to be electrocuted, on an indictment brought by the grand jury of that county, which, omitting formal parts, reads as follows: "That the said James Wells, in the county and State aforesaid, on or about the 18th day of May, 1921, did unlawfully, wilfully, feloniously and of his malice aforethought, and after deliberation and premeditation, kill and murder one Peter Trenz by striking him, the said Peter Trenz, with a certain blunt instrument, the exact description of which instrument is to the grand jury unknown, the said blunt instrument being then and there had and held in the hands of him, the said James Wells."

The testimony, so far as is necessary to set it forth, is substantially as follows: Dr. Collins, the coroner of

Drew County, Arkansas, sometime in May, 1920, examined the body of one Peter Trenz. Dr. Collins had been a practicing physician for twenty-five years and had had considerable experience in examining wounds. The wounds he found on the body of Peter Trenz, in his opinion, caused his death. It was shown that Trenz lived about nine or ten miles northeast of Monticello, and that he was killed at his home.

It is unnecessary to set forth in detail the testimony on behalf of the State. It suffices to say that the testimony tended to prove that the appellant, a negro boy of about eighteen years of age, killed Trenz, and that his motive was robbery. The sheriff of the county, among other things, testified that two or three days after he had arrested the appellant he had a conversation with him. He asked the appellant why he killed the old man, and the appellant said, because the old man had complained about his work and cursed and threatened to get his gun and kill the appellant. So he (appellant) went up the road and got a stick and came back in the yard and got behind a stump. He did not want to let the old man see him. But the old man discovered him, and he got up and cut the old man in the head with a stick; that he reported the matter to a neighbor by the name of King. The sheriff stated that, after the arrest and while he was bringing the appellant to jail, he (witness) stated that old man Trenz was getting old, and there was considerable feeling against the person who did this. He told appellant and his brother, both of whom had been arrested, that if they did it he wanted them to say so, and if they didn't do it he wanted them to say so; that he would carry them to Little Rock. The sheriff was asked if in his conversation he told them they had the right to keep silent, and he answered, "Yes, sir; I told them if they did it I wanted them to tell the truth and if they didn't do it I wanted them to say so." He did not advise them that they had the right not to answer the question at all. They knew that he was the sheriff

who had put them in jail. Walter Lawson, the deputy sheriff and jailer, testified to subsantially the same.

The appellant moved the court to exclude the testimony of Burks, the sheriff, on the ground that he had not advised appellant of his rights. The appellant was a witness in his own behalf. He testified that he and his brother, Calvin, who was about 16 years old, were working for Trenz doing farm work. He told of a previous quarrel he had had with Trenz in which Trenz had upbraided him for neglect of his work, and concluded by striking the appellant on the nose, causing same to bleed. He then says that he told his brother what had happened. He and his brother concluded that, notwithstanding their ill treatment by Trenz, they had to remain with him as they had signed a contract to do so; that his brother went to the house, and later he went to the house and asked Trenz where his brother Calvin was, and Trenz told him that Calvin had gone to the store. Appellant then said he wanted to go to the store, and Trenz said, "You are not going to the store. You all are going to make me kill you yet." Appellant then relates what took place as follows: "He had his gun and we tussled, and I hit him with a stick, and went and caught up with my brother, and we came back to the house, and my brother said, 'There is no light in the house. I am going to get some one to see what is the matter.' So we went up to Mr. King's and told him there was something the matter with Mr. Trenz. I did not tell him what I had done to Mr. Trenz. At the time this happened Mr. Trenz was standing on the ground. After I told him I wanted to go to the store, and he said I was not going, he ran out at me with a gun. We began tussling on the gallery and some on the ground, and there is where I hit him. I hit him one lick on the throat and one on the head.  *  *  *  I did not hit the old man with an iron. I had no knife, and the cut on the throat was made by the lick.  *  *  *  After we got off the gallery, we tussled on the ground until I got close

enough to the stick to get it. I hit the first lick under the throat, and the second one on the head, and he fell. I left him lying on the ground. I do not know what he did with the gun. I did not think I had killed him; I did not think I had hit him that hard."

1. The first contention of appellant is that the venue was not proved. The testimony of Dr. Collins to the effect that he was the coroner of Drew County and that he had made an examination of the body of Trenz and found him wounded unto death, and the testimony of Sheriff Burks to the effect that he was the sheriff of Drew County, Arkansas, and went to the place where Trenz lived nine or ten miles northeast of Monticello, where he found his dead body and arrested the appellant, taken in connection with the testimony that Trenz died of wounds he had received at his home, was sufficient to establish the fact that Trenz was killed in Drew County, Arkansas. The court will take judicial knowledge that the county seat of Drew County, Arkansas, is Monticello, and also that the boundary of Drew County in a northeasterly direction is more than ten miles from the town of Monticello. *Guerin* v. *State,* 150 Ark. 295; *Forehand* v. *State,* 53 Ark. 646; *Scott* v. *State,* 75 Ark. 142.

2. The appellant next contends that the court erred in giving instruction No. 11. It is unnecessary to set out this instruction, for no objection was made to it in the court below. Such being the case, we cannot consider the alleged error predicated upon the court's ruling in giving this instruction. *Cegars* v. *State,* 150 Ark. 648; *Morris* v. *State,* 142 Ark. 297, and cases there cited.

3. Counsel for appellant urges that the court erred in not excluding the testimony of witnesses Burks and Lawson at the time appellant moved to have same excluded, instead of waiting until the testimony was all adduced. It is unnecessary to decide whether this testimony should have been excluded, for, treating the same as incompetent, the instructions of the court that such testimony

was improper and directing the jury not to consider it, removed any possible prejudice against the appellant that may have been created in the minds of the jury by such testimony.

4. The indictment charged that the deceased was killed with a blunt instrument, the exact nature of which was unknown to the grand jurors. The contention that it was error not to require proof of this allegation cannot be sustained. The uncontradicted testimony at the trial showed that Trenz was killed with a blunt instrument. The testimony of appellant, himself, was to the effect that he struck Trenz with a stick. In view of the above undisputed evidence, it is manifest that the above allegation in the indictment was wholly immaterial and should be treated as surplusage.

5. The fifth and last ground in the motion for a new trial is ''that the court erred in permitting the State to call the witness Henry Carter and permitting him to testify in regard to finding the pocket-knife and keys on or near the premises after the State had closed its testimony in chief and after the defendant had closed his testimony.'' ''It rests within the sound discretion of the trial courts to permit testimony to be adduced out of time, and the exercise of that discretion will not be disturbed by this court unless an abuse is shown.'' *Walker* v. *State,* 100 Ark. 180. No abuse of that discretion is shown. There is no error.

Let the judgment be affirmed.