VENABLE v. STATE.

Opinion delivered January 22, 1923.

1. CRIMINAL LAW—CONCLUSIVENESS OF VERDICT.—In determining whether the facts and circumstances admittted in evidence will support the verdict, the Supreme Court is required to give to such facts and circumstances their highest probative value.

2. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.—In order to establish a conspiracy, it is not necessary to prove the unlawful agreement between the parties by direct and positive evidence, but the unlawful concert of action may be shown by circumstances.

3. CONSPIRACY—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to warrant a jury in finding that defendant was party to an unlawful conspiracy to commit a felony.

4. CRIMINAL LAW—EVIDENCE SECURED BY SEARCH WARRANT.—Evidence procured through the means of a search warrant is admissible in a criminal case, regardless of the validity of the warrant.

5. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—Remarks of the prosecuting attorney in a criminal case *held* not erroneous where intended as mere expression of his opinion as to the effect of a failure properly to enforce the law.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge; affirmed.

*Mitchell & Williams* and *Oscar W. Hudgins,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

SMITH, J. Appellant was indicted for having conspired with certain other persons named in the indictment to commit a felony, to wit, to murder the present employees of the Missouri & North Arkansas Railroad, and that in furtherance of said conspiracy he did trans-

port, and cause to be transported, into Boone County, Arkansas, large and unusual amounts of ammunition and firearms with which to carry said unlawful conspiracy into effect. Appellant was convicted, fined $100, and has appealed.

The first assignment of error is that the evidence is insufficient to support the verdict. The prosecution grew out of appellant's alleged connection with a strike which had been called against the M. & N. A. Railroad Company by its employees, who were members of different labor unions. Appellant had been employed as a conductor, and was a member and the secretary of the Order of Railway Conductors, which was one of the organizations whose members were out on the strike. It is insisted that there was no evidence of any trouble between the present employees of the railroad company and any of the strikers, and that there was no evidence of any attempt on the part of any striker to molest the present employees, and no proof of any agreement on the part of the strikers to kill any one.

It may be said that most of the proof offered which was admitted in evidence was admitted over the persistent objections of appellant. For instance, there was an objection, both general and special, on his part to the admission of testimony to show that there was a strike at all, or that he was a striker; and many of his objections to the admission of testimony were sustained, and but little testimony was admitted except over his objection.

Appellant was within his legal right in objecting to testimony, and the question of its sufficiency to support the verdict must, of course, be determined by a consideration of the testimony which was in fact admitted. But it is obvious that the significance and import of the circumstances which were admitted in evidence were fully appreciated, and cannot now be dismissed here as having been treated at the trial as trifles too unimportant to explain. Do the facts and circumstances admitted in

evidence, with the inferences legally deducible there-from, support the verdict? In the decision of that question we are required, of course, to give to these facts and circumstances their highest probative value in support of the jury's verdict.

The testimony may be summarized as follows: A strike on the M. & N. A. Railroad had been called on February 26, 1921, by certain unions of railroad employees. The Order of Railway Conductors, of which appellant was a member, was one of the labor unions participating in the strike. The strike was being conducted continuously and systematically, and the unions to which the strikers belonged were aiding them in promoting the strike. The strike centered around the city of Harrison, and quarters were rented in that city, where the strikers gathered for the exchange of views and for conference. This room was first in the O'Neal building, and the strikers repaired there to receive the strike benefits, which were paid at regular intervals by the labor unions. Appellant was in charge of this room for some months, but later moved his office to his home, where the strikers continued to visit him regularly.

On the night of June 26, 1922, Selby, Stevens and Barnett, who were indicted with appellant as co-conspirators, left Harrison and drove to Springfield, Missouri, where they arrived about sunup. After arriving in Springfield they went to a wholesale hardware store, where Selby represented himself as being engaged in the retail hardware business in Harrison. The salesman made out the bill, consisting principally of cartridges of different calibers, and amounting, at whole-sale prices, to $37.62. After filling this order, Stevens directed the shipping clerk to add to the bill a thousand 12-guage shells, loaded with nitro power and No. 2 chilled shot. The wholesaler had only 750 shells of that kind in stock, and they were included in the bill. The price of the shotgun shells was $28.96, making the total bill $66.58. Stevens and Barnett were former employees of the railroad, and Selby ran in Harrison a small

grocery store and "short-order" eating house. An offer was made to prove that he was a sympathizer of the strikers, but the court sustained an objection to that question.

It transpired that the salesman-manager of the wholesale store in Springfield was a stockholder in a hardware store in Harrison, and was advised of the tension there. His suspicions were aroused by the size and character of the order, as he knew that no game could be lawfully hunted at that season of the year which required shot of the size of those ordered. He also recognized Stevens as one of the strikers; so he called the sheriff at Harrison over the telephone and advised that officer of the purchase. The sheriff swore out a warrant for the parties, and went out upon the Springfield and Harrison road to a point which he knew the parties would have to pass on their return to Harrison, and he arrested them late in the afternoon at that place. The sheriff found two boxes of ammunition in the automobile, weighing about 150 pounds. The purchasers made no explanation of their possession of the ammunition; nor did they protest against it being taken from their possession.

No testimony was offered on behalf of appellant, but the State called Stevens as a witness. The hostility of this witness was obvious, but he offered the explanation that the party was going to Springfield to get some parts for a Ford car, and he went along because he was invited to go. He did not know whether the parts had been purchased for the car or not, but they were not found in the car by the officers.

On the afternoon of the day on which appellant's alleged co-conspirators were arrested, an unusually large number of strikers visited appellant's residence. A Mrs. Woodruff, who lived directly across the street, testified that her attention was attracted by the number of persons she saw going into and leaving appellant's residence, and their conduct. About four or five o'clock in the afternoon four men came to appellant's house in a

car, and when they left one or two of them had guns, and the men drove away towards the north, in the direction where Selby, Stevens and Barnett were later arrested with the ammunition. On the same afternoon three strikers were seen in a Ford car driving very rapidly in the direction of Bear Creek Springs, where Selby and his companions had been arrested by the officers a short time before.

On Saturday before appellant's case was called for trial the circuit court issued an order directing that appellant's house be searched for firearms and ammunition. The search was made, and the sheriff who served the search warrant testified that he found no arms or ammunition, but that he did find, buried in appellant's garden, a box containing two boxes of dynamite caps and a large roll of dynamite fuse and a quantity of emery dust. The court excluded testimony in regard to finding the emery dust, but permitted the officer to tell about finding the dynamite caps and the dynamite fuse, and exceptions were duly saved to the admission of this testimony.

The prosecution was had under section 2845, C. & M. Digest, which reads as follows: "Sec. 2845. If two or more persons shall agree and conspire to commit any felony, and make some advance thereto, without committing the felony, they shall be deemed guilty of a misdemeanor."

It is, of course, settled by law that, in order to establish a conspiracy, it is not necessary to prove the unlawful agreement between the parties by direct and positive evidence, but the unlawful concert of action may be shown by circumstances. *Sims* v. *State,* 131 Ark. 185.

In the case of *Chapline* v. *State,* 77 Ark. 444, the court said that "the existence of the assent of minds which is involved in a conspiracy may be, and, from the secrecy of the crime, usually must be, inferred by the jury from proof of facts and circumstances which, taken together, apparently indicate that they are merely parts of some complete whole."

Under this test we think a case was made which we cannot overturn as being unsupported by legally sufficient evidence.    There was concert of action for some purpose; but for what purpose?    What meant all this ammunition under the circumstances under which it was purchased?    For whom was it intended?    What inference more reasonable than it was intended for the persons whose employment by the railroad company, notwithstanding the strike, prevented the strike from being successful?    Did appellant participate in the unlawful purpose?    We think the jury was warranted in finding that, if there was an unlawful purpose, appellant was a party to it.    He appears to have been the custodian of instrumentalities adapted to sabotage; and something besides sabotage must have been contemplated in the purchase of the ammunition, otherwise the dynamite would have sufficed.    We know, without proof, that cartridges and shells are not as well adapted to sabotage as dynamite.    Then why have both, if only sabotage was contemplated?

We think the jury did not exceed its prerogative, under the law, in finding, from this testimony, that the conspirators, of whom appellant was one, intended to use the ammunition for the purpose stated in the indictment.

It is alleged that the warrant to search appellant's premises was issued without legal authority, and that the testimony in regard to the articles found on his premises was improperly admitted.    We do not stop to inquire whether the search warrant was properly issued or not, as we have held, in a case where there was no search warrant of any kind, that evidence showing what was found was admissible if it was relevant to the issues joined.    There is a conflict in the authorities on this subject, and there are courts which hold that if the search was wrongfully made evidence will not be received showing what the searchers found.    But, upon a review of the authorities, we decided otherwise, and in a later case

reaffirmed that holding, and we are not disposed to overrule those cases.

We hold therefore that the court did not err in admitting the testimony as to the articles found on appellant's premises, although the search warrant may not have been properly issued (which we do not decide) ; and we are also of opinion that the testimony was competent and relevant as tending to show appellant's connection with the conspiracy and the purpose of the conspirators as well. *Benson* v. *State,* 149 Ark. 633; *Briscoe* v. *State,* 149 Ark. 648.

In his closing argument the prosecuting attorney referred to the trouble growing out of a coal strike at Herrin, Illinois, and referred to it as a massacre, and in that connection said: ''When that terrible thing occurred, because the men, who were working in the mines and trying to support their families with honest labor, had taken the places of those strikers, the people of Illinois did not know those fellows intended to commit murder, and we do not know what these men intended to do, but you have all the facts and circumstances connected with it, and the officers tried to prevent a Herrin tragedy here.''

The court was asked to exclude this argument and to reprimand the prosecuting attorney for having made it, but declined to do so, and exceptions were duly saved.

We think no error was committed. This was but a mere expression of the opinion of the prosecuting attorney as to the effect of a failure to properly enforce the law; and if the State's case was established by the testimony, it was not an improper argument to have made, for the allegation of the indictment was that the parties intended to commit murder with the ammunition which had been transported into Boone County.

No error appearing, the judgment is affirmed.