WADE GRIFFIN, JR. *v.* STATE OF ARKANSAS

5503                                    455 S. W. 2d 882

Opinion delivered June 29, 1970

*Ted Goldman,* for appellant.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

John A. Fogleman, Justice. Appellant was convicted of assisting in assault of officer Harold Vines in violation of Act 123 of 1967 [Ark. Stat. Ann. § 41-2802.1 (Supp. 1969)]. His points for reversal are:

1. While the testimony was sufficient to support a misdemeanor conviction for assault upon an officer in violation of § 41-2802, it was insufficient to connect assaults by others on the

officer with that by appellant or to show that appellant had knowledge of assistance by others or community of intent and purpose with them, or that any such intent and purpose were communicated and thus insufficient to prove that two or more persons assisted him or that he assisted two or more persons in assaulting the officer.

2. The circuit judge neglected to instruct the jury that the testimony would not sustain a conviction on the charge made. (Under this point appellant argues that the statute is void for vagueness in that it fails to state that assistance in the assault must be given with "knowledge and communication of the intent and purpose of two or more other persons involved in such an assault.")

3. The court's instructions no. 3 and no. 8 failed to charge the jury that the prohibited assistance must be with "knowledge and communication of the intent and purpose of two or more other persons aiding in the assault upon the officer."

Evidence upon behalf of the State was as follows:

Appellant's automobile overturned in a ditch. The police were called.[1] Officers Harold Vines and David Ederington arrived at the scene, and saw a crowd of people gathered there.[2] The officers got out of the police car and Vines asked if anyone was hurt. Upon receiving a negative response from an unidentified person, Vines then asked who was driving the vehicle. Appellant, who was standing beside his vehicle, stepped forward, said "I was. I'm not scared, I've been in the war. I wasn't killed over there. I'm not going to be killed here. Take me, G . . . d . . . you, if you can," and started

---

[1] Griffin said that he instructed someone to make this call.

[2] Appellant testified that this crowd consisted of 100 people or more.

toward Vines with his fists. Vines attempted to halt Griffin by use of chemical mace, to no avail. Griffin started hitting the officer, who then attempted to defend himself by striking appellant twice with a "slapper." A group of young colored males then "swarmed" him. Vines observed that some of the crowd had Ederington down in the street. Griffin was immediately in front of Vines, swinging at and striking him, while the others came up behind the officer and to his side. They knocked Vines down in the ditch, with all of the participants on top of him. Griffin was then on top of Vines, and the others at his side. Griffin was beating the officer with his fists and kicking him and "hollering" all the while. At the same time, the other participants were kicking the policeman about his arms and legs, and striking him about his face, nose and side. They were also "hollering." Vines, feeling that he and his companion were about to be killed, drew his pistol and fired at appellant, who was still kicking and beating the officer. Griffin was struck about his chest and backed away, as did the others. Vines said, however, that they were all still "hollering" at the police officers, cursing them and saying "that they were going to get us."

As Ederington went to assist Vines, after having heard Griffin's statement to the officer when that officer and Griffin started "scuffling," he was "jumped" by two or three persons from the crowd, and knocked to the street. After he had "scuffed around" with them for three or four seconds he heard the report of a gun and saw everyone start backing away. From his position on the ground, he then saw Vines leaning against a fence over in the ditch with his nose bleeding. Ederington saw Griffin standing about five feet from Vines. He heard Vines "holler" at the people standing around that if they didn't want Griffin shot again they had better come get him. At that time Griffin was still trying to advance toward officer Vines.

Appellant's father then came and tried to hold him back.

Griffin's version was quite contradictory to the testimony of the officers. He said that Vines was striking him on the head and back while he and Vines were on the ground.

Appellant raised the first point listed above by his motion for a directed verdict of acquittal at the conclusion of all the evidence. The point was asserted in the motion for new trial. The gist of his argument is that he had no knowledge of any assistance in the assault and that the unlawful purpose of the aiders and abettors was not communicated so as to enable concert of action by appellant and two or more other persons. He cites authorities holding that: (1) where a particular intent is essential to constitute a crime, a person charged with aiding and abetting in the commission of the offense must be shown to have known of the criminal intent on the part of the person aided and abetted; and (2) that one is not criminally liable for the acts of his associates done without his knowledge or consent, because, in order for him to be held responsible for the acts of another, the act must be done in furtherance of a common design or purpose for which the parties combined.

Appellant seems to take the position that there must be direct evidence of a conspiracy, common design or purpose, and of the intent of the conspirators or joint actors to engage therein. In this he is mistaken. We have long recognized in Arkansas that it is not necessary that an unlawful combination, conspiracy or concert of action to commit an unlawful act be shown by direct evidence, and that it may be proved by circumstances. *Parker* v. *State*, 98 Ark. 575, 137 S. W. 253; *Dickerson* v. *State*, 105 Ark. 72, 150 S. W. 119; *Venable* v. *State*, 156 Ark. 564, 246 S. W. 860; *Mondier* v. *State*, 210 Ark. 933, 198 S. W. 2d 177; *Housley* v. *State*, 143 Ark. 315, 220 S. W. 40. It may be inferred, even though no actual meeting among the parties is proved, if it be

shown that two or more persons pursued by their acts the same unlawful object, each doing a part, so that their acts, though apparently independent, were in fact connected. *Chapline* v. *State,* 77 Ark. 444, 95 S. W. 477; *Parker* v. *State, supra; Dickerson* v. *State, supra; Mondier* v. *State, supra.* Where the testimony shows a concert of action, between the persons alleged to have jointly committed a crime, or the person charged and another, it has been held sufficient to establish the necessary common unlawful object and intent. *Parker* v. *State, supra; Doghead Glory* v. *State,* 13 Ark. 236. Where the combination of persons to do an unlawful thing is shown, each of them is liable for the act of one proceeding according to the common plan, if it terminates in a criminal result, even though it is not the particular result intended. *Mondier* v. *State, supra; Dorsey* v. *State,* 219 Ark. 101, 240 S. W. 2d 30.

In *Dickerson* v. *State, supra,* we approved a jury instruction that if the jury found that three persons, charged with an assault, acted with a common and unlawful purpose, and that during the progress of the assault they were all present and participating, and aided and abetted each other, all persons so participating would be guilty of the same offense and each responsible for the other's acts. The basis of objection to the instruction was that there was no evidence of any conspiracy formed between the three. We held that the facts and circumstances connected with the assault and the presence and participation of those charged was sufficient to show an unlawful combination among the parties to make the assault, and the instruction, a correct statement of law.

We find the case of *Childs* v. *State,* 98 Ark. 430, 136 S. W. 285, peculiarly applicable here. Dave Childs was convicted of the murder of one Franklin Williams. The crime was committed at a public speaking. There was bad blood between Childs and Williams because Williams' wife, who was Childs' sister, was seeking a divorce and custody of their children, alleging that Williams had cruelly beaten her. There were brief ex-

changes of words between the two. During the last such exchange Scott Childs, Dave's brother, began cursing Williams, who first threatened trouble, then withdrew, when Dave Childs commenced firing a pistol at Williams, hitting him four times. There was testimony that Scott Childs had a knife in his hands and that a justice of the peace had restrained Williams from advancing on Scott before the attempted withdrawal. It was shown that Scott grabbed the breast yoke of a wagon and struck Williams over the head with it immediately after Dave quit firing. We said that the evidence was sufficient to justify the conclusion that Dave and Scott were acting together in making the assault on Williams.

Another case closely parallel to the one before us is *Mondier* v. *State, supra,* where we found the evidence sufficient to sustain the conviction of Mondier of voluntary manslaughter of Gerald Bradley, on a charge of murder in which it was alleged that he, Orville Wayne Sloan and Jerry McCabe, by common agreement, assaulted Gerald, Vernon and James Bradley, and while so engaged, Mondier aided Jerry McCabe in the slaying by attacking Vernon Bradley. The evidence only showed that: Mondier, McCabe and Sloan were denied admittance to a tavern, after which the son of the proprietor went outside and became engaged in a fight with someone; the Bradley brothers then went outside and were attacked by Mondier, Sloan and McCabe, in a fight which lasted about two minutes; Sloan stabbed James Bradley and McCabe cut Gerald, while Mondier engaged Vernon. We said that the jury was justified in finding that the fights were part of a mutual plan on the part of Mondier, Sloan and McCabe and that Mondier's engaging Vernon Bradley to prevent his going to the aid of Gerald McCabe was a part of the mutual effort.

We have also held that simultaneous and concerted action by two prisoners in disarming and assaulting two officers having them in custody, sometime after the officers had left them alone in an automobile, was

sufficient evidence to sustain a first degree murder conviction of one of them, as an aider or abettor, even though he did not assault the officer who was killed. *Dorsey* v. *State, supra.* In a murder prosecution, the mere fact that two persons separately approached a third, within a few hours for the purpose of prevailing upon him to kill a fourth person, was held sufficient evidence from which to infer a conspiracy among the three to take the life of the victim. *Decker* v. *State,* 185 Ark. 1085, 51 S. W. 2d 521. The fact that each of two parties was found to possess portions of stolen goods taken in the same larceny was itself held competent to establish a conspiracy to take the goods and implicate both in the commission of the crime. *Wiley* v. *State,* 92 Ark. 586, 124 S. W. 249.[3]

We find that the circumstances shown by the testimony presented by the state were sufficient to pose a jury question as to whether the parties involved in the assault on the officers did so with a common intent and object pursuant to a common plan. It would be extremely difficult, if not impossible, to ever produce direct evidence of a conversation or meeting among the assaulters during the period intervening between the call of the officers and the alleged challenge given them by Griffin, unless one of the participants elected to tell of it. This very problem, arising from the secrecy usually surrounding such understandings, gave rise to the rule, stated by Underhill and often cited by this court, that the existence of the necessary assent of minds may be, and usually must be, inferred from proof of facts and circumstances which, taken together, apparently indicate that they are mere parts of some complete whole. See *Chapline* v. *State, supra.*

We do not consider appellant's other points, insofar as they are based upon the court's neglect to give certain instructions to the jury, or the giving of in-

---

[3]For other cases in which the conduct of the parties has been held sufficient to show a conspiracy, or combination between two or more persons to do something unlawful, see *McGlosson* v. *State,* 171 Ark. 1188, 286 S. W. 931; *Davis* v. *State,* 161 Ark. 665, 256 S. W. 866.

structions which did not advise the jury that it would be necessary that it find that a common intent and purpose existed among the alleged assaulters, which was known and communicated to appellant and resulted in a concert of action. We find no request for any such instruction in the record. If appellant desired that the jury be instructed on any issue, or point not covered by any instruction given, it was his duty to request an instruction correctly declaring the law on that subject. *Lowmack* v. *State,* 178 Ark. 928, 12 S. W. 2d 909; *Cellars* v. *State,* 214 Ark. 326, 216 S. W. 2d 47; *Cooley* v. *State,* 213 Ark. 503, 211 S. W. 2d 114; *Pate* v. *State,* 206 Ark. 693, 177 S. W. 2d 933. We find no such objection, as that now made, raised in the trial court, as required before we can review an instruction for error in this respect. *Bailey* v. *State,* 238 Ark. 210, 381 S. W. 2d 467; *Lewis* v. *State,* 155 Ark. 205, 244 S. W. 458; *Guerin* v. *State,* 150 Ark. 295, 234 S. W. 26; *Banks* v. *State,* 133 Ark. 169, 202 S. W. 43; *Burnett* v. *State,* 80 Ark. 225, 96 S. W. 1007. Furthermore, neither this argument, nor the appended argument that the statute was void for vagueness, appears to have been included in the motion for new trial or otherwise raised in the circuit court, so they are not preserved for review. *Lomax* v. *State,* 248 Ark. 534, 452 S. W. 2d 646; *Nash* v. *State,* 248 Ark. 323, 451 S. W. 2d 869.

We might add, however, that we do not find any basis for declaring the statute void for vagueness, or for failure to state explicitly the requirement of a specific intent on the part of the accused. The stated purpose of the act is to protect law enforcement officers from assaults while in the performance of their duties. The language is perfectly clear, and the intent to do the prohibited act is a criminal intent. *Briggs* v. *State,* 236 Ark. 596, 367 S. W. 2d 750, vacated on other grounds sub nom., *Hamm* v. *City of Rock Hill,* 379 U. S. 306, 85 S. Ct. 384, 13 L. Ed. 2d 300 (1964), rehearing denied sub nom., *Lupper* v. *Arkansas,* 379 U. S. 995, 85 S. Ct. 698, 13 L. Ed. 2d 614 (1965). Under our law, there must be in every assault an intention to injure, the ability to commit a battery and at least the

beginning of an attempt to injure. Ark. Stat. Ann. § 41-601 (Repl. 1964); *Anderson* v. *State,* 77 Ark. 37, 90 S. W. 846; *Pratt* v. *State,* 49 Ark. 179, 4 S. W. 785. The statute then is not void for failure to state the requirement of intent. Neither is it void for failure to state the requirement of common intent. The words "assists or assisted by" are indicative of the same meaning as the words "aids, abets or assists," which have a well-defined meaning in our law, as indicated in many of the cases cited hereinabove.

We do not find persuasive appellant's argument that we should abandon the requirement that specific objections be made to instructions in a trial court. The purpose of requiring objections is to give the trial court an opportunity to correct any error on its part. *Fields* v. *State,* 235 Ark. 986, 363 S. W. 2d 905; *Rutledge* v. *State,* 222 Ark. 504, 262 S. W. 2d 650.

In this respect, we must remember the role of this court as an appellate court, *i. e.,* to correct prejudicial errors of a trial court in acting upon matters called to its attention. No judge has ever reached, or ever will reach, such state of perfection that a retrospective search of a record of trial will not usually reveal some erroneous action that might have been obvious to him and easily corrected if called to his attention. Our system of jurisprudence has never contemplated that kind of appellate review and it should not. To permit this type of review would permit a litigant to gamble on the outcome of a trial and engage the appellate court in a retrospective search for error when he loses.

The judgment is affirmed.