Binns vs. The State.

BINNS vs. THE STATE.

1. CRIMINAL PRACTICE: *Perfecting record in circuit court after appeal.*
   Where the transcript in the supreme court fails to show that the jurors trying the case were sworn, the defendant may be carried into the circuit court and the record be perfected by a *nunc pro tunc* entry showing the fact, and a transcript of the amended record be brought to this court by *certiorari.*

2. SAME: *Change of venue: Perfecting transcript after verdict.*
   Where there is a change of venue and the transcript to the court to which it is changed contains no entry showing the opening of the court from which it was changed, at the term at which the indictment was found, and no entry showing the impanneling the grand jury, the omitted entries may be obtained by *certiorari,* and the transcript perfected after a verdict of guilty; and a pending motion in arrest of judgment for these omissions in the transcript, be then overruled.

3. SAME: *New trial: Separation of jurors.*
   The separation of a juror from his fellows in a criminal case, in violation of the instructions of the court, will subject him and the officer in charge to punishment for contempt; but is no ground for new trial where it is shown that the prisoner was not prejudiced by it.

APPEAL from *Bradley* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Henderson, Attorney General,* for the State.

ENGLISH, C. J. On the twenty-first of August, 1879, William Binns was indicted in the circuit court of Drew county for murdering Thomas P. Edwards with an ax. On

Binns vs. The State.

his application the venue was changed to the circuit court of Bradley county, where he was tried on plea of not guilty, at the September term, 1879, and the jury found him guilty of murder in the first degree. Motions for a new trial and in arrest of judgment were made and overruled; bill of exceptions taken; he was sentenced to be executed on the twenty-fifth of November, 1879, and prayed an appeal, which was allowed by one of the judges of this court.

I. The transcript on which the appeal was allowed, failed to show that the jurors by whom the appellant was tried were sworn. Afterwards, he was brought into the court below in term, and the omission was cured by a *nunc pro tunc* entry, and a transcript of the amended record brought into this court on *certiorari*. The proceedings to amend the record appear to have been regular. It was shown to the satisfaction of the court below that the jurors were in fact duly sworn when impanneled, but that the clerk had omitted, by inadvertence, to make the record show that fact.

1. CRIMINAL PRACTICE: Perfecting record after appeal.

II. Before appellant pleaded not guilty, he was permitted to demur to the indictment in short on the record by consent, and the court overruled the demurrer.

What particular objection was taken to the indictment by his counsel in the court below, does not appear of record, and appellant is not represented by counsel here. The indictment is in Code form, and contains all the requisite allegations to make a valid indictment for murder in the first degree. The time and place of the offense, the name of the person killed, and the instrument of death are alleged, and the usual technical words to show the character and grade of the crime are employed.

2.———:
Change of
venue:Per-
fecting
transcript
after ver-
dict.

III. The motion in arrest of judgment was upon two grounds: First—That the transcript of the record transmitted from Drew to Bradley, on change of venue, contained no entry showing the opening of the circuit court of Drew county at the term at which the indictment purported to have been found.

Second—That it contained no entry showing the impanneling of a grand jury.

These objections were well taken in point of fact, but after the verdict was rendered, and the motion in arrest of judgment filed, and before final judgment upon the verdict, a *certiorari* was ordered and sent to the clerk of the circuit court of Drew, and a transcript returned embracing the entries omitted in the original transcript; and the motion in arrest of judgment was overruled; and in this the court below followed the decision of this court in *Green v. The State, 19 Ark., 178.*

IV. It seems that the court gave all the instructions moved for the prisoner, as well as for the state. In the motion for a new trial no objections are taken to the instructions; they are not referred to in the bill of exceptions, and, hence, not brought upon the record, though the clerk has improperly copied them in the transcript.

3.———:
Separa-
tion of ju-
rors.

V. It is made ground for a new trial, that after the jury were impanneled, and in charge of the sheriff, under an order of court not to separate, and before final submission of the case to them, one of them left his fellows, and went into a saloon, where one of the attorneys for the state was at the time.

From supporting and counter-affidavits made part of the record by the bill of exceptions, it appears that one of the jurors, who complained of being unwell, and in want of some stimulant for a pain in his lungs and shoulder-blade,

and whose habit it was to use such remedy, was permitted by the officer in charge to go into a saloon near the hotel where the jury were kept, and take a drink of whisky, perhaps. It is affirmatively shown that he left the saloon and returned to his fellows immediately after getting the drink, and that while in the saloon he spoke to no person, and no one spoke to him, about the case on trial or any other matter.

The officer in charge of the jury violated the order of the court in permitting the juror to separate from his fellows and go into the saloon for a drink, and the court might have punished the officer and juror for contempt, but it being made to appear that the prisoner was not prejudiced by the misconduct of the juror, it was not error in the court to refuse a new trial on that ground. *Palmer v. The State, 29 Ark., 248.*

VI. The only further ground of the motion for a new trial which need be noticed, is that the verdict was contrary to law and evidence.

It appears from the evidence that Thomas P. Edwards, the person alleged to have been murdered by appellant, was a livery stable keeper of Monticello, and kept a colored woman named Dory Crook, who lived in a house east from the public square of the town about eleven hundred and twenty yards. About 8 o'clock of the evening of the twenty-eighth of June, 1879, Edwards left his stable and went eastwardly in the direction of Dory Crook's house, where he was found about twenty minutes before 10 o'clock of that night, lying on his back in her bed in a dying condition. There was a wound over his right eye, extending to the brain, and his right cheek bone, under the eye, was broken down. An ax was found in the house, with blood and brains on its handle near the ax, and there were indi-

cations upon the pillows of the bed and the floor that much water had been used upon the head of the deceased before any of the witnesses got to the house.

The *corpus delicti* was clearly proved.

The jury found, upon circumstantial evidence, that appellant was the guilty agent of the crime.

It appears that he was displeased by the cohabitation of Edwards and Dory Crook, and threatened to put a stop to it, and, shortly before the former was murdered, inquired of a witness, who knew his habit, which way he went in going to the house of Dory Crook, and was informed that he went sometimes by the fair grounds, and sometimes by the road.

About sundown of the evening on which Edwards was killed, a witness, who went to the house of Dory Crook to return an ax which he had borrowed of her, saw appellant come to her back yard fence and call her to him, where they talked in low tones of voice for half an hour. Other witnesses saw him at her house about dark of that evening.

About 10 o'clock at night the sheriff, being aroused by parties proclaiming that Edwards had been killed, went to the house of Dory Crook, and after causing deceased to be taken home, determined if possible to discover his murderer. Having ascertained that appellant was at the house of Dory Crook about sunset, and remained there for some time, he went, between the hours of 1 and 2 o'clock of that night, to the house of appellant, where he found a brilliant light, there being no light in any of the surrounding houses.

On making an alarm, appellant came to the door, and the sheriff told him he wanted him to go to town with him. Appellant insisted on permission to put on a clean shirt;

but was forbidden to change his clothing. He then went to the back part of the house, and took from a ridge pole a black coat, advanced a few steps toward the door, then returned and hung the coat on the pole from which he had taken it, and took a light-colored coat.

Next morning the sheriff and a medical witness examined the clothing of the prisoner, and found blood on his shirt bosom and on his right side.

The sheriff returned to the house of the prisoner, and found in a pocket of the black coat which he had taken from the ridge pole and replaced, a pair of stockings rolled up, besmeared with blood, as though he had wiped his hands on them.

Many witnesses were examined, and other circumstances were proven, which may have had more or less weight with the jury, but which we deem it unnecessary to state. It is sufficient to say that the verdict was not without evidence to sustain it, and we find in the record no error of law for which the judgment should be reversed.

Affirmed.