## Bowman v. State.

### Opinion delivered December 20, 1909.

1. APPEAL AND ERROR—FORMER DECISION.—The decision of the Supreme Court upon a former appeal is the law of the case. (Page 169.)

2. STATUTES—CLERICAL MISTAKE.—Where the act of Congress ceding the territory called the "Choctaw Strip," adjoining the city of Fort Smith, to the State of Arkansas, and the acts of Arkansas accepting such grant, describe the land ceded by permanent lines so that its location may be understood, a mistake in the particular description of the strip, using the word. "east" instead of west, was a merely clerical error, and will be disregarded. (Page 170.)

3. APPEAL AND ERROR—AMENDMENT OF RECORD.—The record in a felony case may be amended in the circuit court, so as to speak the truth, after an appeal or writ of error has been prosecuted; the prisoner being brought into court and the amended record brought up to the Supreme Court by certiorari. (Page 172.)

4. JURY—SELECTION—PREJUDICE.—It was not prejudicial error, where 11 jurors had been obtained from the regular panel, to order one talesman at a time to be summoned, instead of summoning twice that number, as required by Kirby's Digest, § 2348, if appellant did not exhaust his peremptory challenges. (Page 173.)

5. RAPE—CONSENT—INSTRUCTION.—It was not error to instruct the jury in a rape case that if the prosecutrix was under the age of 12 years she was incapable of understanding and consenting to the sexual act, even though there was no evidence as to her understanding the nature of such act, as the law in such case presumes that she was incapable of consenting, in the absence of proof to the contrary. (Page 174.)

6. WITNESSES—IMPEACHMENT—INSTRUCTION.—An instruction to the effect that the testimony of an impeached witness should be considered by the jury, if they believe it, or if it be corroborated, was not prejudicial where the facts to which the impeached witnesses swore were established by other and uncontradicted witnesses. (Page 175.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; affirmed.

*C. T. Wetherby,* for appellant.

There was error in drawing the jury. Kirby's Dig., § 2348; 74 Tex. 287; 11 S. W. 1117; 45 Cal. 323; 80 Ill. 251; 70 Miss. 554; 12 So. 582. There was error in the remarks of the prosecuting attorney. 24 Tex. App. 433; 6 S. W. 540; 6 Tex. App. 19; 24 Mo. 475; 90 N. C. 688; 126 Ill. 150; 18 N. E. 817.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

The proceedings of the court are presumed to have been regular. 72 Ark. 590. Appellant cannot complain here for the first time that the demurrer was not overruled. 73 Ark. 407; 76 Ark. 280. The description of land in the act is sufficient. 115 Ill. 463; 66 Cal. 15; 78 Ala. 119; 92 N. C. 172; 8 Allen 214; End. on Int. of Stat., § § 27, 28, 39, 298 to 302. The word "east" will be construed "west" when it is evident that it was so intended. 61 Wis. 215. There was no error in drawing the jury (19 Ark. 156) for appellant had not exhausted his challenges. 30 Ark. 328; 35 Ark. 639; 45 Ark. 165; 69 Ark. 322; 50 Ark. 492. The error in the prosecuting attorney's remarks was cured by the court. 75 Ark. 246; 75 Ark. 437; 65 Ark. 475.

HART, J. This is an appeal by William Bowman from a judgment of conviction of rape, and is the second appeal in the case. William Bowman was indicted for the crime of rape. A demurrer to the indictment was sustained by the circuit court, and the State appealed to this court. The demurrer to the indictment raised the question whether the circuit court of Sebastion County for the Fort Smith District had jurisdiction over crimes committed in the territory locally known as the "Choctaw Strip." This court held that it had such jurisdiction, and the cause was remanded with directions to overrule the demurer. The case is reported in 89 Ark. 428, under the style of *State* v. *Bowman.*

On the remand of the case the defendant again raised the question of jurisdiction by demurrer, which was filed and overruled on August 5, 1909. The decision on the former appeal became the law of the case, and the demurrer was properly overruled.

The ground of the motion to quash the indictment is that the act of Congress approved February 11, 1905, ceding the ter-

ritory commonly called the "Choctaw Strip" to the State of Arkansas, and the acts of our Legislature accepting the same, approved February 16, 1905, and March 14, 1905, are not effective, for the reason that said acts do not describe any territory at all.

The act of Congress granting the land and the acts of our Legislature accepting the grant describe the land ceded as "all that strip of land in the Indian Territory, lying and being situated between the Arkansas State line, adjacent to the city of Fort Smith, Arkansas, on the Arkansas and Poteau rivers, described as follows, namely:

"Beginning at the point on the south bank on the Arkansas River, 100 paces east of old Fort Smith, where the western boundary line of the State of Arkansas crosses the said river, and running southwesterly along the bank of the Arkansas River to the mouth of the Poteau River to the center of the current of said river; thence southerly up the middle of the Poteau River (except where the Arkansas River intersects the Poteau River) to the point in the middle of the current of Poteau River opposite the mouth of Mill Creek and where it is intersected by the middle of the current of Mill Creek; thence up Mill Creek to the Arkansas State line; thence northerly up the State line to the point of beginning."

In the case of *Beardsley* v. *Nashville,* 64 Ark. 240, Mr. Justice RIDDICK, speaking for the court, after quoting as the rule of construction, the following: "A deed is to be construed according to the intention of the parties as manifested by the entire instrument, although such construction may not comport with the language of a particular part of it," said: "When a deed contains two descriptions of the land conveyed which are inconsistent with each other, that description must control which best expresses the intention of the parties, as manifested by the whole instrument and the surrounding circumstances."

Applying these rules, there can be no doubt as to the territory intended to be ceded to the State of Arkansas. The general description, both in the act of Congress and the acts of our Legislature, in general terms describes it by permanent lines, so that its location could not be mistaken. In the particular description it is perfectly plain that the use of the word "east" in the clause, "Beginning at a point on the south bank on the Arkansas River

100 paces east of Old Fort Smith," was a clerical mistake; for
the point designated as the beginning point was one "where the
western boundary line of the State of Arkansas crosses the said
river." Obviously, the word intended to be used was "west," in-
stead of "east." The particular description in the present case
can be made effective by either rejecting as surplusage the mis-
taken description "100 paces east of Old Fort Smith," or by sub-
stituting the word "west" for "east." *Palms* v. *Shawano County,*
61 Wis. 215; Endlich on Interpretation of Statutes, § 319.

Therefore, the court correctly overruled the motion to quash
the indictment. A change of venue was granted to the defendant,
and the case was tried in Scott County.

It is conceded by counsel for defendant that there was suf-
ficient evidence to support the verdict, and this is clearly appar-
ent from a reading of the record.

The girl alleged to have been raped was only 11 years old,
and had known the defendant nearly all her life. He had stayed
all night at her father's house on the night before, and had left
the house with him on the morning of the alleged rape. Later in
the morning he returned, and, as testified to by Ella Banks, he
grabbed her, threw her down and raped her. She described her
resistance and his manner of accomplishing his purpose. We
omit the details, and only state that they were abundantly suf-
ficient to establish the crime of rape. Ella Banks was corrob-
orated by her aunt, who ran for assistance after the defendant
had overcome the prosecutrix. Ella Banks was examined by a
physician in the presence of some of the neighbors shortly after-
wards, and her private parts were all torn and bleeding. Other
evidence was also adduced to corroborate her testimony.

The defendant, William Bowman, testified that he stayed all
night at the home of the father of Ella Banks the night before
the crime was alleged to have been committed, and left the house
in company with Mr. Banks the next morning. He testified that
soon afterwards he went to a saloon in Fort Smith, got drunk
and does not remember anything more until he was arrested.
Said that he did not remember to have gone back to the neigh-
borhood where Mr. Banks lived on the morning in question.

It is proved that the crime was committed in the territory
hereinbefore referred to as the "Choctaw Strip" in the Fort Smith
District of Sebastian County.

After the appeal to this court, it was discovered that the transcript did not show that the mandate of this court upon the reversal of the case on the former appeal had ever been filed in the circuit court, and that there was no judgment of the circuit court overruling the demurrer of the defendant as directed by the mandate.

In the case of *Lafferty* v. *Rutherford,* 10 Ark. 454, the court said: "We are clearly of the opinion that the circuit court has no power to retry a cause which has once been brought to trial and final judgment until the same shall have been regularly reversed by this court, and that fact shall have been directly communicated by this court, accompanied with instructions to proceed."

In the case of *Hollingsworth* v. *McAndrew,* 79 Ark. 194, the court said: "The remand of the cause by this court and the filing of the mandate with the clerk of the lower court within the time prescribed by the statute gave the lower court jurisdiction."

Upon the representation of the Attorney General that the mandate had been filed in the circuit court before it again assumed jurisdiction of the case, and that the defendant's demurrer to the indictment had been overruled, permission was given to apply to the Sebastian Circuit Court for the Fort Smith District to have the record in these respects amended.

In the case of *Goddard* v. *State,* 78 Ark. 228, the court, speaking through Mr. Justice RIDDICK, said that "the rule is established in this State that a court has authority to amend its records so as to make them speak the truth as to what was done, and may do so upon any competent legal evidence."

In the case of *Binns* v. *State,* 35 Ark. 118, the court held: "Where there is a change of venue, and the transcript to the court to which it is changed contains no entry showing the opening of the court from which it was changed, at the term at which the indictment was found, and no entry showing the impaneling of the grand jury, the omitted entries may be obtained by certiorari, and the transcript perfected after a verdict of guilty; and a pending motion in arrest of judgment for these omissions in the transcript be then overruled."

In the case of *Sweeney* v. *State,* 35 Ark. 588, the court, through Chief Justice ENGLISH, said: "It is well settled in this

court that the record of the circuit court may be amended, so as to make it speak the truth, in a criminal as well as a civil case, after appeal or writ of error, the prisoner in a criminal case being brought into court and the amended record brought up to this court by certiorari."

Notice of the application to amend the record was given to the defendant's counsel, and the defendant was brought into court when the same was heard and determined. The court found that the mandate of this court, with indorsement on it by the clerk of the date of its filing, showed that it was filed in the circuit court of Sebastian County for the Fort Smith District on the 7th day of June, 1909. This, with the presiding judge's own recollection, he being the judge who had presided throughout all the proceedings in this case, was sufficient evidence upon which the court could base a finding that the defendant's demurrer had been overruled in accordance with the directions of the mandate, on the 8th of June, 1909, and for the entry of a judgment *nunc pro tunc.*

Besides, the record was amended so as to include the mandate and the date of its filing in the circuit court, which was on June 7, 1909, a date before the day when the court again assumed jurisdiction of the case. As we have already seen, the filing of the mandate of this court in the circuit court within the time prescribed by the statute gave the circuit court jurisdiction to retry the cause; and if we treat the demurrer of the defendant as not having been acted upon, and the case as having proceeded to final adjudication without judgment on the demurrer, the demurrer will be considered as waived. *Kiernin* v. *Blackwell,* 27 Ark. 235. Then, too, the demurrer which was filed and overruled August 5, 1909, and which has been heretofore discussed, was a special demurrer, and one of its grounds also raised the question of whether the "Choctaw Strip" was within the jurisdiction of the Sebastian Circuit Court for the Fort Smith District. That issue was, as we have already stated, settled adversely to the defendant in the opinion on the former appeal, which is the law of the case.

Counsel for defendant insists that the jury was not drawn according to law. The record shows that eleven jurors were obtained before the regular panel was exhausted. At that time the State had seven and the defendant seventeen peremptory chal-

lenges. The defendant objected to the court having one talesman at a time summoned, and asked that as many as three be summoned, in order to permit him to draw. He based his request upon section 2348 of Kirby's Digest, which provides that where the regular panel is exhausted "the court shall order the sheriff · to summon bystanders to at least twice the number necessary to complete the jury, whose names shall be placed in the box and drawn." Our statutes provide that a judgment shall be reversed for prejudicial errors only. The court has held that this statute was passed for the purpose of obviating "the necessity of reversing judgments of conviction on account of mere errors of form which do not affect the substantial rights of the defendant." *Lee* v. *State,* 73 Ark. 148; *Hayden* v. *State,* 55 Ark. 342. The error in not complying with the statute was not prejudicial in this case because the defendant selected the remaining juror and failed to exhaust his peremptory challenges. We have had occasion to pass upon the question lately in the case of *York* v. *State,* 91 Ark. 582, where our former decisions on the subject are reviewed.

In his opening statement to the jury, one of the attorneys for the State said that the defendant "had chosen to remove the trial of said cause from the county of its alleged commission and bring the same to Scott County for trial." The court admonished him to state to the jury the facts upon which the State relied for a conviction. The attorney then withdrew the remark, and said the State wanted the defendant to have a fair and impartial trial. It is manifest that no prejudice resulted to the defendant. The court admonished the attorney, and the remark was withdrawn. Besides, the reading of the indictment to the jury and the whole testimony in the case showed that the crime, if committed, was committed in Sebastian County.

Counsel for the defendant predicates reversal upon the action of the court in giving instruction No. 4, which is as follows:

"If the jury find from the evidence that at the time of the alleged commission of the offense the prosecuting witness, Ella Banks, was under the age of twelve years, and that on account of her tender years she was incapable of understanding the nature of the act, her consent would be no protection to the defendant."

The objection made to the instruction is that there was no

evidence to show that Ella Banks was incapable of understanding the nature of the act. This is true; but, as she was only eleven years of age, the presumption was that she was incapable of consenting, in the absence of proof to the contrary. *Coates* v. *State,* 50 Ark. 336. Besides, there was no testimony whatever tending to show that she consented to the act.

The court, after correctly instructing the jury upon the subject of reasonable doubt and that they were the sole judges of the weight of the evidence, defined the manner in which a witness may be impeached. The court then gave the following:

"10. But the credibility of a witness, though his character for truth is impeached, is still a question for the jury; and if the jury believes his testimony, it should be taken and considered, notwithstanding his impeachment.

"11. If an impeached witness be corroborated, his testimony should be taken and considered by the jury, notwithstanding his impeachment."

Counsel for the defendant urges upon us that instruction No. 11 was erroneous because it invaded the province of the jury in telling it what weight to give to the evidence. Conceding this to be true, there was no prejudice to the rights of the defendant.

Rose Frost, Ola Miller and Mary Coleman were the witnesses impeached. Their testimony was as to matters that were proved by evidence that was undisputed. The witnesses, Rose Frost and Ola Miller, testified that they went to the house immediately after the crime was alleged to have been committed, and that Ella Banks was crying; that they were present when she was examined, and detailed the result of the examination. Their statement was the same as that of the other witnesses who testified in regard to the same matters, and there was no contradiction to the testimony.

Mary Coleman testified that she saw the defendant going towards the Banks house on the morning in question, and that he had a bottle of whisky, and said that he was going to stop in there (meaning the Banks house) and "get a maidenhead." This was also testified to by Steve Frost, and was not disputed by any other fact or circumstance adduced in evidence.

The sole defense of the defendant was that he became so drunk on the morning that he did not remember anything that

occurred. He made no attempt to account for his whereabouts at the time the crime is alleged to have been committed. The only testimony adduced in his behalf except his own as to his drunkenness was that of witnesses to the effect that he had previously borne a good reputation. This defense was submitted to the jury under proper instructions. As above stated, there was ample evidence to sustain the verdict of the jury.

We have carefully examined the record, and find no prejudicial error therein. The judgment is therefore affirmed.