KEITH *v.* STATE.

4641                                    235 S. W. 2d 539

Opinion delivered January 15, 1951.

*L. Weems Trussell,* for appellant.

*Ike Murry,* Attorney General and *Jeff Duty,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. The defendant, Josie Bell Keith, was tried and convicted under an indictment charging her with assault with intent to kill Sadie Hughes, the punishment being fixed by the jury at five years in the penitentiary. Defendant has appealed, and the first five assignments in the motion for new trial challenge the sufficiency of the evidence to support the verdict and judgment. The defendant and prosecuting witness, Sadie Hughes, are negro women residing at Sparkman, Arkansas.

Sadie Hughes testified that shortly before noon on June 28, 1949, she was walking along the road from her home to the business section of Sparkman when she noticed defendant's automobile parked in the road ahead. Defendant was seated in the car and the two women spoke to each other as Sadie walked by. Defendant then started her car, drove past the prosecuting witness, and again stopped across the road in front of Sadie. Defendant then jumped out of the car and fired a pistol twice at Sadie who ran a short distance into the front yard and through the front door of the home of Lizzie Wright. Defendant went into the Wright house through the back door and chased Sadie from room to room onto the back porch where Sadie grabbed hold of either the gun, or defendant's arm, and they both fell from the porch to the ground. In the ensuing scuffle on the ground, de-

fendant fired the gun again, the bullet grazing the side of Sadie's head. According to Sadie, the defendant then said: "Don't wipe the G-- d--- blood off your face; if I had another bullet, I'd finish you up."

The testimony of Sadie relative to the shooting in front of the Lizzie Wright home was corroborated by the testimony of Dorothy Jean Daniels, a 16-year-old girl. Dorothy testified that she was sitting on Lizzie Wright's front porch and that defendant fired the first shot before she alighted from her car and then fired the second shot as Sadie was running toward the Wright home. The third shot was fired as witness was going around to the back of the house. When she reached the back yard, defendant was standing beside Sadie with the pistol in her hand and Sadie's face was bleeding. Shortly thereafter Maggie Cowan, an elderly woman, came up and persuaded defendant to leave.

In opposition to the State's testimony, defendant offered several witnesses who testified that they heard only the one shot fired in the Wright back yard. They also testified that in the altercation in the back yard defendant struck Sadie with the pistol after the latter struck her with a stick and that the gun was discharged in the ensuing scuffle.

Maggie Cowan, a witness for the State, who lived a block and a half away, also testified that she heard only one shot and "didn't pay any attention to just what it was" until informed of the trouble. On cross-examination she described Sadie's wound as follows: "I judged it was a shot. It didn't seem to be a lick that she had struck her. It seemed to be a glance, I just judged, where a bullet had struck. It didn't cut the width of it except it cut a gash."

In rebuttal the State offered proof tending to show that some of the defense witnesses were not present at the scene of the shooting.

Defendant interposed the plea of self defense. Although she did not testify in the case, there was evidence by both the State and defendant that the shooting was

motivated by defendant's belief that the prosecuting witness had been having illicit relations with defendant's husband. The prosecuting witness is a married woman with four children. She strenuously denied having any improper relations with defendant's husband. The husband of Sadie Hughes testified that defendant came to his barber shop twice before the shooting and told him that she had heard that her husband was having illicit relations with Sadie. This witness stated that he had never seen anything that would cause him to be suspicious of his wife and told defendant he, "didn't think there was anything to it."

We have repeatedly held that in order to constitute the crime of assault with intent to kill a specific intent to take the life of the person assaulted must be shown, and the evidence must be such as to warrant a conviction for murder if death had resulted from the assault. *Allen v. State,* 117 Ark. 432, 174 S. W. 1179. Appellant earnestly contends that the evidence here does not measure up to these requirements. It is argued that the testimony of Sadie Hughes and other witnesses for the State is exaggerated, unreasonable and unworthy of belief and our attention is directed to certain inconsistencies in such testimony and the version of the shooting given by defense witnesses. The jury were the judges of the credibility of the various witnesses and we must consider the evidence in the light most favorable to the State. As thus viewed, we hold it ample to sustain the verdict.

The most serious question in the case arises in connection with the sixth assignment in the motion for new trial which alleges error in the court's ruling on the State's objection to certain testimony of the witness, Benjamin Daniels. This witness testified that about a month before the shooting Sadie Hughes told him to tell defendant that she, Sadie, was having improper relations with the defendant's husband; that she had an automatic and was ready any time. The prosecuting attorney objected to that part of the testimony concerning improper relations between Sadie and defendant's husband. In sustaining the objection the court ruled as follows:

"Ladies and gentlemen of the jury, the only purpose for which this testimony could be given would be to go to the credibility of the prosecuting witness when she testified she had had no relationship with the husband of the defendant and for that purpose you may consider it but not as a defense to this alleged crime." Daniels further testified that when Sadie Hughes asked him to deliver the message to defendant, he informed her that he was not a news carrier. There is no showing that defendant ever received information of the alleged conversation.

In *Flowers* v. *State,* 152 Ark. 295, 238 S. W. 37, the accused testified in detail about information that he had received of improper relations between his wife and the person assaulted shortly before the assault. In affirming the conviction for assault with intent to kill the court said: "The fact of intimacy between appellant's wife and the assaulted person and appellant's receiving information thereof did not constitute a justification in law for the assault (*Fisher* v. *State,* 149 Ark. 48, 231 S. W. 181), but those facts were proper for the consideration of the jury in mitigation of the offense and also in determining whether or not the assault was made upon a sudden heat of passion and upon apparently sufficient provocation. Appellant was therefore entitled to an instruction on those subjects, and, if he had asked for it in proper form, the court should have given an instruction telling the jury that they should consider these facts and the circumstances under which appellant received the information, the length of time before the assault and the circumstances under which he made the assault, in determining whether the passion under which he acted at the time was suddenly aroused, and whether the provocation was apparently sufficient to make the passion irresistible."

It is noted that the rule stated is predicated upon a showing that the accused had received information of the illicit relations between his wife and the person assaulted. There is an absence of proof in the instant case that defendant was ever informed of the alleged conversation between Sadie Hughes and Benjamin Daniels and no pas-

sion could be aroused or provocation furnished by a statement which was never communicated to the defendant.

In some jurisdictions evidence of improper conduct by a deceased toward defendant's wife has been held admissible in homicide cases, even though uncommunicated to the defendant, in support of a plea of self-defense where such evidence tends to shed light as to who was the aggressor. See Anno. 44 A. L. R. 860. The record shows that the testimony objected to in the instant case was not offered for that purpose, and the fact that defendant voluntarily entered into the difficulty with the prosecuting witness and was the aggressor throughout seems to be undisputed. Moreover, other evidence was admitted without objection tending to show that defendant did receive information from other sources relative to alleged improper relations between her husband and Sadie Hughes, and the jury was told in Instruction No. 10 that it could not convict defendant of assault with intent to kill if she acted under a sudden heat of passion caused by a provocation apparently sufficient to make such passion irresistible. Since it was not shown that defendant was ever informed of the conversation between Sadie Hughes and Benjamin Daniels, we think the court properly limited the jury's consideration of such testimony.

Assignments Nos. 7, 8, 9 and 11 of the motion for new trial allege improper influence upon and misconduct of the jury which resulted in defendant's not receiving a fair trial. In the absence of anything in the record to support these assignments of error, they will not be considered. *Conley* v. *State*, 180 Ark. 278, 21 S. W. 2d 176.

In assignments 10 and 12 error is alleged in the court's refusal to declare a mistrial when the prosecuting attorney asked Benjamin Daniels on cross-examination: ''Q. Isn't it a fact that all the colored people are afraid of Josie Bell Keith?'' The court promptly sustained defendant's objection to the unanswered question, told the jury that the question was improper and further asked that each juror raise his hand if he could and would disregard the question. The record reflects that each juror

raised his hand. The action of the trial court removed any prejudice resulting from the unanswered question. *Jutson and Winters* v. *State,* 213 Ark. 193, 209 S. W. 2d 681.

Assignment No. 13 is that the court erred in holding Sterling Hughes, a 10-year-old boy, not qualified to testify. In the course of the examination of the boy by counsel and the court, questions were asked and answers given as shown below.[1] In *Crosby* v. *State,* 93 Ark. 156, 124 S. W. 781, it was held that the trial court was in error in holding that a 10-year-old boy was competent to testify under an examination very similar to that disclosed here. The common law rule prevails in this state as to the competency of witnesses in criminal cases. This rule is that a witness of any age may testify if, upon examination by the court, the witness appears to have sufficient intelligence to comprehend the nature and obligation of an oath and understands that there may be punishment for false swearing. *Durham* v. *State,* 179 Ark. 507, 16 S. W. 2d 991.

Another well settled rule is that the question of competency is left to the sound discretion of the trial judge and in the absence of clear abuse of the judicial discretion exercised, it is not reviewable upon appeal. *Yother* v. *State,* 167 Ark. 492, 268 S. W. 861. In *Payne* v. *State,* 177 Ark. 413, 6 S. W. 2d 832, the court quoted with approval the following language of Justice BREWER, speak-

---

[1] Q. What happens to boys and girls that don't tell the truth? A. They tell stories. Q. What happens to them if they tell stories? A. I don't know. Q. What does the Sunday School teacher tell you happens to them if they tell lies or stories? A. I don't know. Q. Do you know it is wrong to tell a story? A. Yes, sir. Q. Can you tell this jury the truth about what happened over there near your home about a year ago? A. Yes, sir. Q. Do you remember about it and can you tell them? A. Yes, sir. BY THE COURT: Q. Boy, what would happen to you if you were to tell a story, would you be punished in any way if you should tell a story? A. Yes, sir. Q. Who would punish you? A. Whipping. Q. Would you get any other punishment besides that? A. I don't know. BY THE COURT: I don't believe he understands the solemnity of an oath. BY MR. TRUSSELL: Q. When I asked you if you went to Sunday School do they teach you anything about God in Sunday School? A. Yes, sir. Q. What do they tell you in Sunday School will happen to bad boys that do wrong and tell lies? A. Go to jail. Q. Do they go anywhere else? A. Yes, sir. Q. Where do they go, did they tell you anything about that? A. No, sir.

ing for the court, in *Wheeler* v. *United States,* 159 U. S. 523, 16 S. Ct. 93, 40 L. Ed. 244: ''The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous.'' See, also, *Hudson* v. *State,* 207 Ark. 18, 179 S. W. 2d 165. We cannot say that there was an abuse of discretion on the part of the trial judge in holding that the Hughes boy did not comprehend the sanctity and obligations of an oath.

The last assignment of error is that the court erred in giving instructions 2 to 14, inclusive. There was only a general objection to each of the instructions which were given on the court's own motion. We have carefully examined the instructions and find that they correctly declare the law as generally given in such cases. None of the instructions are inherently erroneous and we do not review the ruling of the trial court unless a specific objection is made to such instructions. *Tong* v. *State,* 169 Ark. 708, 276 S. W. 1004.

Other alleged errors are argued in the brief which were not brought forward in the motion for new trial and no objections were made to the ruling of the court on such matters at the trial. We find no prejudicial error, and the judgment is affirmed.

ROBINSON, J., dissents.