JENKINS v. STATE.

4754                                        261 S. W. 2d 784

Opinion delivered October 26, 1953.

Rehearing denied November 23, 1953.

*Creekmore Wallace* and *Q. Byrum Hurst,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant Bill Jenkins was charged and convicted of murder in the first degree for the killing of Cleo Jones, a 16 year old girl, on February 17, 1952. The jury fixed his punishment at death. At the close of the evidence of the state and at the conclusion of all the testimony, appellant by proper motions challenged the sufficiency of the evidence to sustain the verdict. It is now earnestly insisted that the state failed to prove premeditation and deliberation on the part of appellant.

The evidence disclosed that on the date in question appellant was living on highway 88 near Hot Springs about 500 feet from the home of Lester Cox. Appellant was separated from his wife, who lived about a quarter mile away on the same road. Marie Pitts had been keep-

ing house for appellant for nearly four years. Deceased, Cleo Jones, moved to appellant's home about three weeks before the killing and was employed at a "drive-in" operated by Lester Cox in the vicinity.

On the morning in question, appellant visited a night club from 1 a.m. to 4 a.m., where he drank intoxicants. He then drove his truck to Cox's "drive-in" where he stayed until later in the morning.

On the same morning, Marie Pitts and Cleo Jones decided to go to Pine Bluff to visit Marie's sister, and they had started to town to telephone the sister when they met appellant, who was driving his truck. The two girls entered the truck, and the appellant drove to Cox's drive-in, where they had coffee and spent considerable time. During the drive back to appellant's residence, Marie and the appellant quarreled and the latter became angry about the planned trip to Pine Bluff. The three drove to appellant's residence where they all got out of the truck. Appellant went into his house, and Marie and the deceased walked about 500 feet to the Lester Cox residence. Deceased entered the Cox home, and Marie walked from the porch toward appellant. As she closed the front gate appellant fired three shots at her with a pistol, wounding her in the arm and shoulder.

When Marie fell, appellant walked on to the Cox house with the pistol in his hand, and more shooting occurred in the house. Appellant then walked from the rear of the house, with the gun still in his hand, and stopped momentarily as he observed Marie still lying on the ground. He then drove off in his truck. Shortly thereafter, Cleo Jones was found lying in the doorway of the Cox home that leads from the kitchen to the back porch. There were two bullets imbedded in her brain, and she was unconscious until her death a few hours later. The shooting occurred about 10 a.m., and appellant was apprehended about three hours later while driving his truck. In the meantime, he had engaged in further drinking and was either drunk or in some other kind of stupor at the time of his arrest. There was

nothing in his walk or demeanor at the time of the shooting to indicate to a next-door neighbor that he was then intoxicated.

Lester Cox and appellant were close friends and partners in the livestock business. Cox worked at his "drive-in" until 7:30 a.m. and was home in bed at the time of the shooting. As witnesses for the state, Cox and Marie Pitts were reluctant and hostile, and each claimed to have suffered an unusual lapse of memory concerning certain facts contained in written statements made by them shortly after the killing. They also gave an account of deceased's having poured a phenobarbital solution in appellant's coffee at the Cox "drive-in" shortly before the shooting. This account had not been previously disclosed to investigating officers, and the jury in all probability regarded it as a fictitious afterthought.

Appellant argues that the foregoing evidence, even when considered in the light most favorable to the state, was wholly insufficient to show premeditation and deliberation.

The traditional view of this court on the question of premeditation and deliberation was expressed by Judge BATTLE, speaking for the court, in *Green v. State*, 51 Ark. 189, 10 S. W. 266: "In order to constitute the killing of a human being murder in the first degree, there must be a specific intent to take life formed in the mind of the slayer before the act of killing was done. It is not necessary, however, that the intention be conceived for any particular length of time before the killing. It may be formed and deliberately executed in a very brief space of time. If it was the conception of a moment, but the result of deliberation and premeditation, reason being on its throne, it would be sufficient. The law fixes no time in which it must be formed, but leaves its existence as a fact to be determined by the jury from the evidence." This rule has been consistently followed by this court.

It is true that we have held that premeditation and deliberation will not be inferred or presumed from the

mere fact alone that the killing was done with a deadly weapon. *Weldon* v. *State*, 168 Ark. 534, 270 S. W. 968. But, we have also held that the premeditation and deliberation required to be shown to warrant conviction of first degree murder may be inferred as a matter of fact from the circumstances of the case, such as the character of the weapons used, the nature of the wounds inflicted, and the accused's acts, conduct, and language. *Bramlett* v. *State*, 202 Ark. 1165, 156 S. W. 2d 226.

Appellant calls our attention to a growing trend of some courts, and more particularly the Federal courts, to hold there must be some "appreciable" time between the formation of the intent to commit a killing and the actual killing.[1] Even in the cases relied on, there is no attempt to set out any particular time within which the intent to kill must be formed. In *McClendon* v. *State*, 197 Ark. 1135, 126 S. W. 2d 928, relied on by appellant, the killing was the result of a sudden fight between the defendant and deceased and this court observed that there was no time for the defendant to meditate or deliberate. We think a different situation is presented in the instant case.

Here the appellant, after engaging in the quarrel with Marie Pitts and the deceased, had time to enter his house and drive to the Cox residence while deceased and Marie Pitts had walked the distance of 500 feet. This afforded sufficient time for a cooling off period and ample time for reflection and consideration. From this and the other circumstances in evidence, the jury was warranted in concluding that the killing was the result of premeditation and deliberation on the part of appellant under our rule.

It is next insisted that an article appearing in a Hot Springs newspaper during the trial prejudiced appellant's right to a fair and impartial trial. The article objected to appears for the first time in the motion for new trial. The record shows that the jury was kept together and fails to disclose that any juror had access to

[1] See 4 Ark. L. Rev. 92.

or read the article. In fact, the matter was never brought to the court's attention during the trial. Under these circumstances there can be no presumption of prejudice arising from the mere publication of the article. As the court said in *Holt* v. *U. S.,* 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021: "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trials under the conditions of the present day."

Appellant also argues the court erred in one of the instructions on the question of insanity, because it erroneously assumed appellant killed deceased. The record affirmatively discloses that no objections were made by either side to any instructions given by the court. Although Ark. Stats., § 43-2723, provides that in capital cases there need not be any exceptions saved to the rulings of the court, we have repeatedly held that objections must be made to the proceedings complained of, and that there can be no reversal on account of the giving of an erroneous instruction which was not objected to in the trial court. *Alexander* v. *State,* 103 Ark. 505, 147 S. W. 477; *Johnson* v. *State,* 127 Ark. 516, 192 S. W. 895. This same rule is applicable to appellant's contention that the court erred in permitting two witnesses on rebuttal to testify that appellant had requested a roadhouse band to play "Shotgun Boogie" shortly before the killing. There was no objection to this and other testimony which the appellant now contends was erroneously admitted.

It is further insisted that the trial court erred in reading the information to the jury as one of the instructions at the conclusion of all the evidence. Aside from the fact that there was no objection to the court's action, we have held that it was proper for the court to read the information to the jury as one of the instructions under the circumstances presented here. *Malone* v. *State,* 202 Ark. 796, 152 S. W. 2d 1091. Our statute (Ark. Stats., § 43-2110) provides that the prosecuting attorney may read the indictment or information to the jury in his opening statement. In the case at bar, the

court observed that this had not been done and proceeded to read the information as one of the instructions without objection by the appellant.

We have examined other assignments of error in the motion for new trial and find them to be without merit. The record discloses that appellant received a fair and impartial trial. The rulings of the trial court on the admissibility of evidence were more favorable to the appellant than he was entitled under the law, and we find no prejudicial error in the record. In our review of the case, we are urged by counsel to consider the fact that appellant is a "Mississippi Choctaw" Indian with an enigmatic personality and a cultural background into which he and his ancestors have been forced over the years. These and other matters have been presented in a convincing manner, but are such as would be more appropriately addressed to the chief executive of the state.

The judgment is affirmed.