RUTLEDGE v. STATE.

4756 262 S. W. 2d 650

Opinion delivered October 19, 1953.

As amended on denial of Rehearing December 21, 1953.

*S. M. Bone,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, J. On information charging first degree murder, appellant was found guilty of voluntary manslaughter and his punishment fixed at a term of five years in the State Penitentiary. This appeal followed.

For reversal, appellant, in three of his assignments of error, questions the sufficiency of the evidence. He does not argue these assignments here. We hold, after consideration of all of the testimony, when viewed in the light most favorable to the State, as we must do, that it was ample to support a conviction.

Frank Beel, brother of Joe Beel, the victim in this case, owned a six hundred acre farm. On the day of the tragedy, Frank Beel discovered some fifty head of cattle belonging to appellant, Rutledge, which had entered Beel's pasture through a gap in Beel's fence. He immediately removed the cattle and wired and stapled the gap. A ''Keep Out'' sign had been posted at this gap for about five years.

Alvie and Vernon Lewis, who were hauling logs for appellant, and had been accustomed to pass through this gap over Beel's property, went to Beel's house and, in effect, demanded that he open the gap, stating that they had been advised by Judge Jeffery to cut the fence if Beel did not open it. Beel refused until he had consulted Judge Jeffery, promising to open it if the Judge so directed. At this point, Alvie Lewis became angry, began cursing, and said: ''I am going over there and cut that fence and if you want to see it, be there in 15 minutes, but if you do, I will tell you one g-- damn thing right now, you won't come back.'' At the time of this argument, appellant was parked in his car about two hundred yards up the road from Frank Beel's home. The Lewis boys then left, followed by appellant.

To reach the point on appellant's land where the logs had been cut, it was necessary to open Clasby's gate, go

across his land, open another gate, then cross Beel's land and open the gap.

After the Lewis boys had departed, Joe Beel and his son, R. L. Beel, got in their pick-up truck to go home and in doing so, it was necessary to pass Clasby's gate. Appellant and the Lewis boys were at this gate when Joe Beel reached it. He stopped and asked appellant not to go through the gap. At this point Alvie Lewis and Joe Beel drew their knives. They soon put up their knives, but continued to quarrel when Alvie Lewis grabbed a shotgun in his truck, put a shell in it, but did not shoot. Joe Beel and his son then left and went home, but soon thereafter Frank Beel arrived and he and Joe procured their guns and started for the gap to ascertain if the Lewis boys had opened it. When Joe and Frank walked down an old road on the Beel property to about fifty feet from the gap, armed as indicated, appellant began shooting at the deceased. Joe and Frank were about eight feet apart at the time and Frank was wounded but Joe apparently was instantly killed by one of appellant's shots. Frank then dropped his gun and ran to Clasby's house. The guns of Frank and Joe Beel were loaded but had not been fired.

While some of the testimony was conflicting, in the circumstances, as indicated, we think it was ample to support the jury's verdict of voluntary manslaughter.

Appellant first argues that "the court erred in overruling defendant's motion to set aside and quash the array of petit jurors, both regular and special lists, named and selected by a jury commission appointed by the court at the present term of this court, and in not ordering the sheriff of the county to select a petit jury," (but see Act 205 of the Acts of 1951). We do not agree. It appears that the regular list of petit jurors, alternates, and specials, previously selected by the jury commissioners at the October term of 1952 was set aside by the court on April 20, 1953, and a new jury commission—, one of whom was a member of the previous jury commission, and alleged to be ineligible, § 39-202, Ark. Stats. 1947—, was appointed by the court to select

the jurors for the April, 1953 term of the Independence Circuit Court.

In effect, appellant argues that an ineligible jury commissioner was allowed to participate in selecting the jury that convicted him.

 The record reflects that appellant's verified motion to quash the array of petit jurors was filed May 27, 1953, overruled by the trial court on the same day, and immediately following (on May 27) the case proceeded to trial. There is no showing or contention by appellant that he exhausted his peremptory challenges allowed him by law in choosing the jury, or that he was forced to accept any juror without the right of peremptory challenge. In fact, the record is silent as to whether he exercised any challenges at all. Appellant has failed to show such "substantial irregularity in selecting * * * the jury", § 43-1911, Ark. Stats. 1947, as would prejudice his rights, in the circumstances, because he has not shown that he exhausted his peremptory challenges. Our statute, 43-2725, provides that for prejudicial error only shall the judgment be reversed.

"Our statutes provide that a judgment shall be reversed for prejudicial errors only. The court has held that this statute was passed for the purpose of obviating 'the necessity of reversing judgments of conviction on account of mere errors of form which do not affect the substantial rights of the defendant.' *Lee* v. *State,* 73 Ark. 148, 83 S. W. 916; *Hayden* v. *State,* 55 Ark. 342, 18 S. W. 239. The error in not complying with the statute was not prejudicial in this case, because the defendant selected the remaining juror, and failed to exhaust his peremptory challenges." *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80, 83. See also *Morgan* v. *State,* 169 Ark. 579, 275 S. W. 918.

Next, appellant says: "The court erred over the objections and exceptions of the defendant in permitting the witnesses, V. L. Beel, Faye Beel and R. L. Beel and others to state and testify that the Lewis boys threatened to kill Joe Beel and Frank Beel when such statements, if made,

were said and done in the absence of the defendant," and thus violated the Hearsay Rule.

This testimony as to the alleged threats made by the Lewis boys to Joe and Frank Beel in the absence of the appellant was excluded by the trial court when an attempt was made by the State to introduce it in chief, but later on in the trial, Alvie Lewis had testified on direct examination on behalf of appellant that it was the Beel brothers who made the threats. Then, at this point, the State was allowed to introduce testimony in rebuttal. Faye Beel (daughter of Joe Beel) and others testified that Joe Beel made no threats and that Lewis warned Joe Beel, as above indicated, if he went down to the gap, he wouldn't return. This testimony being in the nature of rebuttal was properly admitted. (§ 43-2114, Ark. Stats. 1947).

Appellant also argues that there was error in admitting certain testimony on the cross-examination of appellant. The testimony complained of and the action of the trial court in connection with its introduction is disclosed by the record as follows: "Q. Do you happen to remember where you were on the 2nd day of February, 1926? I will tell you this—you were at a jury trial in justice of the peace court where you were convicted of disturbing the peace in Pleasant Plains? A. Before what kind of trial? I don't believe so; I don't believe there is any record I was tried before a jury in Pleasant Plains. Q. And fined $50.00 and $1.00 on the other charge by that jury? A. That is possible but I don't recall it. Q. There was a still found on your place October 23, 1952? A. There was not. Q. How far off your place was it and what has been the disposition of that charge? A. You are going to have to explain to me what you are talking about. Q. I'll withdraw the question if you don't want to answer it.

"By Mr. Bone: It is not competent. Now then, we ask the court to instruct the jury that this testimony introduced here which he admitted is no evidence whatever of the defendant's guilt on this charge; that the jury can only consider it in weighing his testimony, it goes to his credibility and that only. By the Court: Alright. Gen-

tlemen, you are instructed that this whole line of testimony that has to do with convictions on the part of the defendant will be considered by you only in weighing the credibility of the witness; it will only go to the weight you will attach to his testimony, and that is all.''

The court, in limiting this testimony at the appellant's request and allowing it to be considered by the jury only in so far as it might affect appellant's credibility, did not commit error. *Phillips* v. *State*, 190 Ark. 1004, 82 S. W. 2d 836.

Appellant next contends that the action of the trial court in permitting the instructions to be carried into the jury room by the jury was reversible error. This contention is without merit for the reason that this was a matter within the sound discretion of the court. No abuse of such discretion was shown here. In *Benton* v. *State*, 30 Ark. 328, this court said: ''The court had the discretion to refuse or permit the jury to take with them the instructions on retiring to consider of their verdict.''

Appellant next says that the court erred in refusing to grant the request of many of the jurors in the form of affidavits, requesting a new trial for appellant, or, in any event, that he be put on probation. Appellant says that their verdict, in effect, was a compromise verdict. We find no merit in this contention. In the circumstances the matter was within the sound discretion of the trial court, as we said in *Black* v. *State*, 215 Ark. 618, 222 S. W. 2d 816: ''The motion for a new trial was accompanied by a petition signed by 8 of the 12 members of the trial jury, asking the court to reduce the death sentence to a life sentence, or to grant a new trial. Conceding that the court had this power, its exercise was a matter within the discretion of the court.'' No abuse of discretion has been shown.

There is still another reason why the action of the court was correct. ''The court should not allow an affidavit of a juror impeaching his verdict to be filed, except to show that it was made by lot,'' *St. Louis, I. M. & S. R. R. Co.* v. *Cantrell*, 37 Ark. 519 (Headnote 5). There is no showing here that the jury's verdict was reached by lot.

Finally, appellant argues that the giving of the general instruction No. 12 by the court was error and says: ''It is clearly seen that the same is not responsive to the evidence in this case, assumes facts on matters that should have been left to the jury, is contradictory and very misleading.'' This instruction, though somewhat long, fully covered the law as applied to the facts and relating to appellant's plea of self defense which he says he solely relied upon. We find nothing in the instruction that would mislead or confuse the jury to the prejudice of appellant. It was not inherently wrong. Appellant made only a general objection. It was his duty, by a specific objection, to point out to the court any vice or error in this instruction in order to afford the trial court an opportunity to make corrections if necessary. This he failed to do. (*Keith* v. *State,* 218 Ark. 174, 235 S. W. 2d 539.)

Other assignments of alleged errors have not been overlooked. It suffices to say that we have examined all and find no error.

Affirmed.

Justice WARD concurs.