FIELDS *v.* STATE.

5052                                  363 S. W. 2d 905

Opinion delivered January 14, 1963.

[Rehearing denied February 11, 1963.]

*George Holmes* and *Randall L. Williams,* for appellant.

*Frank Holt, Atty. General,* by *Thorp Thomas, Asst. Atty. General,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Charles Franklin Fields, was convicted of the crime of rape, and his punishment fixed at death by electrocution. From the conviction and judgment entered thereon, appellant brings this appeal. Since this is a capital case, we have not only examined each allegation of error set up in the motion for new trial, but have, likewise, scanned the transcript, noting each objection made during the course of the trial.

Appellant, an inmate of the State Penitentiary at Tucker Prison Farm, served as a "trusty". On January 15, 1962, Fields escaped,[1] and, while at large, forced his way into the home occupied by the prosecuting witness, Mrs. Myrtle Taylor.[2] According to the evidence, Mrs. Taylor was sitting in a chair, watching television, together with her four-year-old son. Her other children were at school and her husband was away from the home. Mrs. Taylor testified that Fields had a pistol in his hand, and that "He told me to be quiet and to do as he told me and I wouldn't get hurt, but if I didn't that he would kill me because he had just killed a man and what he was going to do now wouldn't be any worse than what he had already done. * * * He pointed the gun at me and asked me if there was any place we could go and I told him 'No' and he said, 'then it will have to happen right here in front of your son.' " Appellant then pushed Mrs. Taylor into the bedroom, and raped her. Thereafter, he made a cup of coffee, and searched for clothes that he could wear. In a short time, Mr. Taylor returned home, and Fields forced Mrs. Taylor out of the house, into the open, where her husband could see her, while he (appellant) remained behind the house. According to the testimony of the witness, she told her

---

[1] Fields' assignment at the prison farm consisted of feeding and caring for hogs located in an area near the back boundary or southeast side of the farm. He was permitted to carry a weapon for the purpose of protecting the stock from stray dogs that had been killing some of the young pigs. On the date in question, appellant simply walked away from the prison farm, with a pistol in his possession.

[2] The door was fastened by a latch, but Fields kicked it open. From the testimony of Mrs. Taylor, "Q. What brought your attention to the defendant Fields? A. My door being suddenly kicked open, the noise, he was inside the house when I first, at the first commotion the door was just suddenly busted open and there he stood."

husband, ''There is a man here that wants the keys to our truck . . . if you don't give him the keys he will kill me.'' Mr. Taylor then threw the keys to Fields, and the latter got in the Taylor truck and drove away. Mr. Taylor verified his wife's testimony as to the events occurring after he reached the house.

Mrs. Taylor, who according to the evidence, was hysterical, was taken to the hospital, where she was examined by Dr. Charles Reid, a physician of Pine Bluff. Dr. Reid testified that he found evidence of recent sexual intercourse, and that Mrs. Taylor was crying and upset and required a sedative before she could be examined or questioned intelligently.

Other facts, hereinafter mentioned, served to substantiate the charge placed against appellant. The aforementioned evidence was sufficient to sustain a conviction; in fact, the uncorroborated testimony of Mrs. Taylor, standing alone, under our decisions, was sufficient proof to justify the jury in finding that appellant had sexual relations with Mrs. Taylor by force and against her will. See *Hodges* v. *State,* 210 Ark. 672, 197 S.W. 2d 52, *Bradshaw* v. *State,* 211 Ark. 189, 199 S. W. 2d 747.

Appellant moved to strike that portion of the testimony given by Mrs. Taylor, wherein she stated that Fields said that he ''had just killed a man, and what he was going to do now wouldn't be any worse than what he had already done.'' The court, over objections, admitted this testimony for the purpose of showing the intent and design of Fields. No error was committed in admitting this evidence. Certainly, the statement was a threat to the prosecuting witness of what would happen to her if she did not submit to his desires, and, for that matter, a rapist might well make such a remark, irrespective of whether it was true, as a way of frightening his intended victim. This was not a matter of admitting irrelevant evidence as a means of showing a criminal disposition, but rather, the statement was pertinent to the issue of whether Fields forced Mrs. Taylor to have intercourse with him.

It is asserted that the court erred by permitting Dr. Reid to testify as to the emotional condition of the prosecuting witness at the time of his examination, but the assignment is without merit, for we held contrary to this contention in *Snetzer* v. *State,* 170 Ark. 175, 279 S. W. 9.

Appellant was overtaken and arrested shortly after he left the Taylor home, at which time he surrendered his pistol to the sheriff.[3] While in the car with the officers, Fields was asked by Deputy Sheriff Buck Oliger of Jefferson County if he had raped Mrs. Taylor. Oliger testified that appellant answered, "If she said I did, I did." Oliger also testified that he (Oliger) told appellant that Mrs. Taylor had said that he raped her twice, and Fields replied, "No, only once." This evidence was objected to by appellant, but the court admitted the testimony solely for the purpose of identifying Fields as the man charged with rape. The statements were admissible. Prior to the taking of the evidence before the jury, the court had retired to chambers and heard testimony as to the voluntary nature of the statements. We have approved this procedure. *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15, *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800. According to the testimony, the statements were entirely voluntary; in fact, there is no evidence anywhere in the record of threats, duress, intimidation, or mistreatment of any nature. Nor is there evidence of any promise of immunity from prosecution, or leniency, as an inducement to Fields to make the statements. While the court limited the evidence to identification of appellant, the testimony was actually allowable in a broader sense. We have held that any voluntary admission, tending to connect a defendant with a crime charged against him is admissible in evidence. *McMillan* v. *State,* 229 Ark. 249, 314 S. W. 2d 483, *Smith* v. *State,* 230 Ark. 634, 324 S. W. 2d 341.

[3] The sheriff, together with a deputy, and the prison superintendent, were already in the vicinity, looking for Fields, and they observed him driving away from the Taylor home in the truck. Mr. and Mrs. Taylor were standing in the yard, and after a brief conversation with the Taylors, the officers started in pursuit. Appellant wrecked the vehicle, after driving about three miles, attempted to escape on foot, and was endeavoring to enter a house when the officers apprehended him. Fields threw his pistol into the air, and the sheriff picked it up off the ground.

During the examination of Gerald Taylor, husband of Myrtle Taylor, counsel for appellant asked the witness if he planned to file suit against the State of Arkansas for damages. The court would not permit the witness to answer the question, but Taylor replied, "I can't answer that."[4] Appellant asserts that he was attempting to show that the outcome of the instant case would have a material effect on a civil claim for damages against the State of Arkansas (based on the alleged attack on Mrs. Taylor). From appellant's brief,

"If in fact a suit was planned or contemplated, the credibility of both the Taylors testimony would be lessened considerably because of their monetary interest in the civil action. If such action was planned by the Taylors, this fact should have been given to the jury and the evidence weighed by the jury along with the other evidence of the Taylors."

It is unnecessary that we determine whether the question, or any answer that might have been given, was, or would have been, relevant, or admissible in the case before us, for no objection was made to the trial court's ruling. In order for this court to consider the alleged error, it was necessary that an objection be made. As we stated in *Jenkins* v. *State,* 222 Ark. 511, 261 S. W. 2d 784:

"Appellant also argues the court erred in one of the instructions on the question of insanity, because it erroneously assumed appellant killed deceased. The record affirmatively discloses that no objections were made by either side to any instructions given by the court. Although Ark. Stats., § 43-2723, provides that in capital cases there need not be any exceptions saved to the rulings of the court, we have repeatedly held that objections must be made to the proceedings complained of, and that there can be no reversal on account of the giving of an erroneous instruction which was not objected to in the trial court. (Citing cases) This same rule is applicable to appellant's contention that the court erred in permit-

---

[4] It is not clear from the record whether Taylor was stating that he did not know whether he would make a claim against the state, or whether his answer was based upon the court's ruling.

ting two witnesses on rebuttal to testify that appellant had requested a roadhouse band to play 'Shotgun Boogie' shortly before the killing. There was no objection to this and other testimony which the appellant now contends was erroneously admitted."

The court gave fifteen instructions, including one (No. 10), which was requested by the appellant. A general objection was made to the other fourteen instructions. A general objection, of course, is only sufficient if an instruction is inherently erroneous; otherwise, it is necessary that the error of an instruction be specifically pointed out, in order that the trial court may have an opportunity to make any necessary corrections. *Rutledge* v. *State*, 222 Ark. 504, 262 S. W. 2d 650. Actually, the instructions appear to be entirely correct and proper; certainly, none can be classed as inherently erroneous.

As stated at the outset, inasmuch as this is a capital case, we have explored the record and given consideration to each objection made by appellant during the trial.

Finding no errror, the judgment is affirmed.

MR. JUSTICE HOLT disqualified.